RECEIVED
JAN 23 2023
U.S. DISTRICT COURT
DISTRICT OF R.I.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,

*Plaintiff,*

VS.                                                    Civil Action No. _____

RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN TIGHE,
MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS and TIMOTHY FLYNN
in their individual and official capacities; GERO MEYERSIEK,

*Defendants*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Mary Seguin ("Seguin" or "Plaintiff"), citizen of the State of Texas, sues for

damages in excess of $1,000,000.00 from Defendants RHODE ISLAND OFFICE OF CHILD

SUPPORT SERVICES ("RI OCSS" or "Defendant(s)") in its official capacity; KEVIN TIGHE {"Tighe"

or "Defendant(s)"), MONIQUE BONIN ("Bonin" or "Defendant(s)"), FRANK DIBIASE ("Dibiase" or

"Defendant(s)"), WENDY FOBERT ("Fobert" or "Defendant(s)"), KARLA CABALLEROS

("Caballeros" or "Defendant(s)") and TIMOTHY FLYNN ("Flynn" or "Defendant(s)") in their

individual and official capacities; GERO MEYERSIEK Gero Meyersiek ("Meyersiek" or

"Defendant(s)").  Such damages arise out of Defendants':  Breach of Contract; Breach of Implied

Contract; Unjust Enrichment; Misrepresentation; Negligent Misrepresentation; Common Law

Bad Faith; Breach of the Covenant of Good Faith and Fair Dealings; Tortious Breach of Implied

Covenant of Good Faith and Fair Dealings; Breach of Fraudulent Concealment; Concealed Fraud;

Tort of Deceit; Bad Faith; Reckless Indifference to the Rights of Seguin; Abuse of process; Breach of Duty; Accounting Fraud; Fraud Cover-up; Rhode Island Government Tort Liability Act pursuant to R.I.G.L. § 9-31-1; 42 U.S. Code § 1983 federal civil rights violation, and states the following in good support of this Complaint:

## <u>NATURE OF THE ACTION</u>

1. This is a breach of contract, tort liability, Rhode Island Government Tort Liability Act under R.I.G.L. § 9-31-1, and 42 U.S. Code § 1983 federal civil rights case under the Fourth Amendment of the United States Constitution as applied to the States under the United States Constitution's Fourteenth Amendment for the Defendants' individual and collective unlawful violations under color of state law of Plaintiff's constitutional right to protection against the unlawful seizures of Plaintiff's Texas properties for their "interest" claim that was already waived per executed contract terms, as well as state tort claims for breach of specific duty to the Plaintiff. The contract was formed on **December 7, 2021**.

2. Defendants are in breach of contract, committed these unlawful violations of Plaintiff's constitutional and state rights under color of state law in bad faith and with malicious purpose in reckless and willful disregard of Plaintiff's rights and property rights.

## I.    JURISDICTION AND VENUE

3. Plaintiff is a citizen of the State of Texas and the amount in controversy exceeds $75,000.00. This Court has subject-matter jurisdiction pursuant to Title 28, Section 1332 of the United States Code (28 U.S.C. § 1332).

4. Plaintiff also brings this action pursuant 42 U.S.C. § 1983 for violations of civil rights under the Fourth and Fourteenth Amendments to the United States Constitution.

5. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights); 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b). Defendants' primary employment is in this district, and Defendants' independent and collective malicious and unlawful violations under color of state law of Plaintiff's constitutional rights giving rise to the claims herein accrued within this district.

7. At all material times, Defendants committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, and willful disregard of Plaintiffs' rights and property rights.

8. These breach of contract, tort liability, state tort liability, and constitutional law violations are "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973) (citing *Southern Pacific Terminal Co. v. ICC*, 219 U. S. 498, 515 (1911), *Moore v. Ogilvie*, 394 U. S. 814, 816 (1969), *Carroll v. Princess Anne*, 393 U. S. 175, 178-179 (1968), *United States v. W. T. Grant Co.*, 345 U. S. 629, 632-633 (1953)).

## II.    PARTIES

9. Plaintiff Mary Seguin ("Seguin" or "Plaintiff") is an adult female citizen of Texas.

10. Defendant Rhode Island Department of Human Services, Office of Child Support Services ("RI OCSS") is a political subdivision of the State of Rhode Island.

11. Defendant Gero Meyersiek is and has been at all material times a resident of Rhode Island.

12. Defendant KEVIN TIGHE is and has been at all material times the Deputy Chief Counsel of Rhode Island Office of Child Support Services ("RI OCSS"). Tighe is a State employee.

13. Defendant MONIQUE BONIN is and has been at all material times the Finance Administrator of the RI OCSS.  Bonin is a State employee.

14. Defendant FRANK DIBIASE is and has been at all material times the Associate Director of RI OCSS.  DiBiase is a State employee.

15. Defendant WENDY FOBERT is and has been at all material times the Accountant of RI OCSS. Fobert is a State employee.

16. Defendant KARLA CABALLEROS is and has been at all times the Child Support Administrator of RI OCSS.  Caballeros is a State employee.

17. Defendant TIMOTHY FLYNN is and has been at all times the Child Support Administrator of RI OCSS.  Flynn is a State employee.

### III.    FACTUAL ALLEGATIONS

1.   All transactions and communications between the Texas Plaintiff and the RI OCSS Defendants were conducted via wire or mail: telephone, email, bank wire transfer or mail. No transactions were conducted in person.

2.  On December 7, 2021, Seguin entered into a good faith contract brokered by the Rhode Island Department of Human Services Office of Child Support Services ("RI OCSS") under

Rhode Island's and the RI OCSS's Debt Compromise Policy[1] as it applies to child support

debt with both Gero Meyersiek (the custodial parent) and RI OCSS, whereby Meyersiek

agreed to waive interest in consideration of Seguin paying him the very large sum of

$104,185.98 in one lump sum to pay off all child support arrears.[2]  On the morning of

December 7, 2021, Defendant Caballeros of RI OCSS emailed a written advisement to Seguin

in Texas that said, "accounting says to pay $104,185.98 by bank wire transfer to RI OCSS's

child support collection bank account" with bank wire instructions.  On the same day,

December 7, 2021, Seguin justifiably relied on RI OCSS's email written advisement and offer,

accepted, and Seguin, per agreement, executed on the agreement via payment by bank

wire transfer the lump sum payoff amount of $104,185.98 in consideration of Meyersiek

waiving interest, the terms of which were offered, accepted and executed by RI OCSS on

December 7, 2021.  Subsequent to Seguin paying by bank wire the payoff amount to RI

OCSS's bank account, Gero Meyersiek changed his mind in breach of contract, kept Seguin's

lump sum payoff payment made in consideration of the waiver of interest, and told RI OCSS

to "put interest back on the system"[3] without disclosure or notice to Seguin.   Then, RI

OCSS, in breach of contract and breach of duty to Seguin, actually executed and

implemented Meyersiek's breach of contract by putting interest back on the RI OCSS system

without disclosure or notice to Seguin.  In breach of contract and in breach of duty, RI OCSS

---

[1] Pursuant to its policy, Rhode Island Office of Child Support Services routinely compromises state-owed arrears, as per written communication provided by the federal Administration for Child and Families, U.S. Department of Health and Human Services, 330 C Street, S.W., Washington, D.C. 20201.

[2] John Langlois's, Deputy Chief Counsel of RI OCSS, representation at Rhode Island Executive Office of Health and Human Services ("RI EOHHS") Appeal Office Prehearing Conference on October 5, 2022.

[3] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe; John Langlois's, Deputy Chief Counsel of RI OCSS, representation at Rhode Island Executive Office of Health and Human Services ("RI EOHHS") Appeal Office Prehearing Conference on October 5, 2022.

not just failed to, but subsequently <u>refused</u> to disclose to Seguin <u>and withheld from Seguin</u> documentation and records of Meyersiek's change of mind in breach of contract and RI OCSS's own actions in breach of contract by executing on Meyersiek's change of mind in breach of contract. RI OCSS failed to return Seguin's wire transfer to RI OCSS's child support collection bank account and kept Seguin's payment without disclosure to Seguin of Meyersiek's "change of mind" breach of contract. As quickly as two days subsequent to Seguin wire transferring her good faith lump sum payoff payment to RI OCSS's support collection bank account, RI OCSS started to place liens and levy on Seguin's property in Texas without disclosure to Seguin, including seizing the bank account from which Seguin wired the lump sum payoff payment in good faith, for the very large amount of $75,638.00. This very large sum of $75,638.00 to this day is unexplained and RI OCSS refuses to provide Seguin with an accounting explanation of how RI OCSS calculated this very large amount. Without giving Seguin any explanation or accounting calculation of how $75,638.00 was calculated, RI OCSS further thwarted, then denied, Seguin's good faith requests and right to her case records for explanation, pursuant to Seguin's several subsequent requests for documentation and calculation explanation.

3. Seguin knew that the payoff agreement she entered into brokered by RI OCSS was a contract with both Gero Meyersiek and RI OCSS. Seguin is and has been aware of RI OCSS's policy of state-owed arrears compromise. At least 36 states and the District of Columbia have debt compromise options available to noncustodial parents, including Rhode Island.[4]

---

[4] Per written communication provided by Commissioner Tangular Gray, Office of Child Support Enforcement, Administration for Child and Families, U.S. Department of Health and Human Services, 330 C Street, S.W., Washington, D.C. 20201.

Compromise means the partial or full forgiveness or reduction of child support debt. Compromise of child support debt is a public policy promulgated through Federal Commissioner Tangular Gray by the Office of the Child Support Enforcement of the Administration of Children and Families in the U.S. Department of Health and Human Services.

4. Defendants knew and should have known that the payoff agreement with Seguin was a good faith contract with both Gero Meyersiek and with RI OCSS, and knew and should have known RI OCSS's policy of state-owed arrears compromise.

5. Subsequent to RI OCSS executing on Meyersiek's communication to RI OCSS in breach of contract to "put the interest back on the system," RI OCSS started seizing Seguin's Texas bank account from which she wired the payoff $104,185.98 payment, and Texas assets through notices of liens and levy (some issued "offline" that Seguin never received notices of in the mail) on Seguin's property for the very large sum of $75,638.00, without notice to Seguin as they relate to Seguin's bank account in the State of Texas, without providing any explanation what it was for or how the very large amount was computed/calculated, without providing any justification, without providing any accounting explanation for the calculation of $75,638.00 lien.

6. Defendants knew and should have known that there was no probable cause for seizure of Seguin's property for "interest" debt that was already waived under contractual terms with Seguin. It must be noted RI OCSS did not return or reject Seguin's lump sum payment wired to its own support collection bank account. Nor did RI OCSS disclose to Seguin the material fact that RI OCSS "put interest back on the system" subsequent to Seguin's bank transfer

payment.  On the contrary, RI OCSS's December 2021 entries in their case tracking record for Seguin's case file showed a preoccupation to ensure Seguin's December 7, 2021 payment would not be reversible, simultaneously "put the interest back on the system" without any regard to disclosure to Seguin on its material change of enforcement property seizure for "interest" adopted by RI OCSS, which clearly lacked any probable cause.[5]

7.  Per documentation of Seguin's *Rhode Island Department of Human Services Office of Child Support Services ("RI OCSS") Case Tracking Case History* documentation, RI OCSS is Gero Meyersiek's ("Meyersiek") agent and Meyersiek is RI OCSS's principal, labeled as "Client."[6] Throughout, RI OCSS acted as Meyersiek's agent and formed an agent relationship. Meyersiek is the Custodial Parent and Seguin is the Noncustodial Parent.  Seguin's daughter, Julia, was emancipated on April 21, 2018, and is an adult twenty-two years old.

8.  Notwithstanding the relationship between Defendants RI OCSS and Meyersiek, RI OCSS also owes duty to Seguin, who is the noncustodial-parent citizen of Texas.  Among the many duties RI OCSS owes and has owed to Seguin include the duty of performing on contract agreement with Seguin, duty of disclosure, duty of acting in good faith and duty to respect Seguin's due process rights, including disclosure of how RI OCSS calculated interest arrears, what and why and how RI OCSS collects "interest arrears" that RI OCSS Defendants knew and should have known Meyersiek waived interest claim per contract agreement RI OCSS brokered and agreed to itself.

9.  The December 7, 2021 contract that Meyersiek entered into with Seguin, waiving all interest in consideration of a lump sum payment of $104,185.98 by Seguin to pay off all

---

[5] Per RI OCSS Case Tracking Case History Documentation entries by Kevin Tighe.
[6] Per RI OCSS Case Tracking Case History Documentation stating Gero Meyersiek is "D Client."

child support arrears Seguin owed,[7] was brokered by Meyersiek's agents, RI OCSS officials

(who also owe Seguin, the non-custodial parent, a duty as collectors of child support):

    a.   Kevin Tighe, Esq.;

    b.   Frank DiBiase, Esq.;

    c.   Monique Bonin (Finance Administrator for the State of Rhode Island);

    d.   Wendy Fobert (RI OCSS Accounting Department);

    e.   Karla Callaberos AKA Karla Samsoya (Seguin's case agent).

10. Seguin accepted the lump sum amount of $104,185.98 in consideration of waiver of interest

    that RI OCSS advised Seguin in writing via email on December 7, 2021, and on the same day

    paid the $104,185.98 in one lump sum in consideration of Meyersiek's waiver of interest on

    December 7, 2021, thereby executed the contract.

11. The December 7, 2021 good faith contract was brokered by RI OCSS, (whose actions at all

    times only advanced the interest of Meyersiek and whose actions are condoned by

    Meyersiek), in Providence, Rhode Island, acting as agent to both Meyersiek *and Seguin*, for

    $104,185.98 which waived Meyersiek's claim for interest[8].  RI OCSS accepted the terms of

    contract between Meyersiek and Seguin, and entered into agreement with Seguin to honor

    the terms of the contract it brokered and accepted with Seguin.

12. Having established the contract terms, agent-relationship(s) between Meyersiek and RI

    OCSS, RI OCSS's contract with and duty to Seguin, location and time, Seguin now proceeds

---

[7] John Langlois, Deputy Chief Counsel of RI OCSS representation at RI EOHHS Appeal Office Prehearing Conference on October 5, 2022.
[8] John Langlois, Deputy Chief Counsel of RI OCSS representation at RI EOHHS Appeal Office Prehearing Conference on October 5, 2022, and comment entered on December 6, 2021 by Kevin Tighe, counsel of RI OCSS, on Seguin's RI OCSS Case Tracking Case History Documentation.

to lay out the facts forthwith, with specificity, of all the acts, events, transactions,

occurrences, and omissions giving rise to the claims in this lawsuit.

13. For about two months, from October 2021 to November 2021, Seguin in Texas, through her

Texas attorney, Bruce Coane, Esq., repeatedly contacted the Rhode Island Department of

Human Services Office of Child Support Services ("RI OCSS") to pay off in full her child

support obligations.  Seguin learned in October 2021 of a hold on her passport renewal

placed by RI OCSS.  From October 2021 to November 2021, Seguin's Texas Attorney

repeatedly contacted RI OCSS to request Seguin's case file in order to ascertain all arrears

owed in order to pay off all arrears.

14. However, RI OCSS refused to discuss Seguin's case with Seguin's Texas Attorney and stated

it would only discuss Seguin's case directly with Seguin alone, without counsel.

15. Unbeknownst to Seguin, while on the one hand RI OCSS refused to discuss Seguin's case

with Seguin's Texas Attorney, on the other hand RI OCSS counsel Kevin Tighe ("Tighe"),

(who upon information and belief is a Deputy Chief Counsel of RI OCSS) instead contacted

Meyersiek's private attorney, Barbara Grady.  Upon information and belief, Tighe and

Meyersiek communicated a number of times in detail regarding Seguin's Texas Attorney's

contact to RI OCSS and planned to deprive Seguin of counsel by refusing to discuss Seguin's

case with Seguin's Texas Attorney.  Upon information and belief, Tighe and Meyersiek and

Grady primarily communicated telephonically to minimize written email and paper trail.

Seguin forms this belief based on RI OCSS's written and verbal representations to Seguin

that it withheld records (that would include notes made of phone conversations and

archived emails) from Seguin of its communication with Meyersiek regarding Meyersiek's waiver of interest.

16. On or about December 6, 2021, Tighe told Meyersiek and his lawyer Barbara Grady that RI OCSS had removed the interest data off the computer case management system in Seguin's case. This means that Seguin would see $0.00 under "Interest" in her RI OCSS Statement of Account online account when she logs into her account online. This online account is designed by RI OCSS, advertised on their website, as the sole portal "child support case management tool" for Noncustodial Parents to review RI OCSS's record of Court Ordered child support, RI OCSS's arrearage calculations, enable non-custodial parents to set up child support payments and review RI OCSS's record of posted child support payments. All online account publication of key information such as "Total arrears due," "Interest," and "Payments Made," is within the sole control of RI OCSS. Essentially, RI OCSS advertises on its own website to non-custodial parents to rely on the figures published by RI OCSS in their RI OCSS online account. This tool is advertised as a form of service to non-custodial parents.

17. On and about December 6, 2021, Tighe explicitly asked Meyersiek if he "wants the interest put back on the system" and Meyersiek explicitly ordered/instructed "not to put the interest on the system." Meyersiek condoned the "taking off" of interest in the system. Upon information and belief, anticipating Seguin will have to eventually directly contact RI OCSS herself since RI OCSS stonewalled Seguin's Texas lawyer's attempts to obtain Seguin's files to pay off child support, Meyersiek and Tighe planned to have Seguin access her RI OCSS online account, where RI OCSS posted a Total Due Arrears for $93,214.58 and $0.00 interest, so as to conceal from Seguin their manipulation and manufacture of her arrears

account she would see as soon as she was led by RI OCSS to log on.  The RI OCSS agreement brokers include Kevin Tighe, Esq.; "KWC;" Wendy Fobert (accounting department), Monique Bonin (Finance Administrator for the State of Rhode Island); Frank DiBiase,Esq. (Chief Legal Counsel); Timothy Flynn, Esq., Adam Dias ( Accounting Department), Karla Caballeros AKA Karla Samasoya (case agent), per Seguin's RI OCSS Case Tracking System record that RI OCSS released to Seguin on December 22, 2022 through the RI APRA (Rhode Island Access to Public Records Act) request she petitioned to the Secretary of EOHHS (Executive Office of Human and Health Services) Ana Novais, on December 1, 2022.[9]  EOHHS "manages" the Rhode Island Department of Human Services, of which RI OCSS is a sub-department.  (RI OCSS denied Seguin's numerous record requests for accounting records and records of Meyersiek's waiver of interest from her own case file over twelve times from October 2021 to the present, only allowing her access to her RI OCSS online account.  The content of Seguin's RI OCSS online account has been manipulated by the agency - through its arbitrary taking off interest and putting interest back on at will - and RI OCSS has control of what arrears numbers to publish online at all times.  RI OCSS's practice of arbitrarily "taking off" and "putting back on interest" at will without proper disclosure or explanation of these material changes to Seguin, effectively and knowingly made false representations to Seguin of inaccurate arrears numbers online in her online account, which RI OCSS then told Seguin to rely on.  Although RI OCSS has a duty to disclose material differences in their published arrears online from what they allege Seguin owes behind the scenes caused by their "taking interest off the system," RI OCSS withheld from Seguin this very material unlawful practice

---

[9] Per RI OCSS Case Tracking Case History Documentation.

of maintaining multiple books of accounts and bookkeeping of several sets of arrears in Seguin's case. This practice is illegal under general accepted accounting principles and practices. RI OCSS's concealment from Seguin its removal of interest from the system manually by RI OCSS is further unlawful. RI OCSS's practice of keeping multiple sets of books in Seguin's case is prohibited by federal deceptive trade practices, federal fair debt collection practices and all other applicable consumer protection laws, both federal and state. The Office of Child Support Enforcement of the U.S. Department of Health and Human Services defines a non-custodial parent as a "consumer" of the Office of Child Support Services. RI OCSS represented at least six sets of books of accounts of alleged arrears from December 2021 to November 2022:

    a.  $93,214.56 Total Due on December 6, 2021, online, as of November 30, 2021.

    b.  $104,185.98 Total Payoff Amount on December 7, 2021.

    c.  $75,638.00 on a Notice of Intent to Lien dated March 3, 2022. RI OCSS rescinded this figure based on alleged unspecified errors on October 14, 2022.

    d.  $73,000.00 per RI OCSS Deputy Chief Counsel John Langlois's representation at the agency administrative appeal Pre-hearing held on October 5, 2022.

    e.  $55,000.00 on RI OCSS correspondence with Meyersiek on October 13, 2022.

    f.  $75,623.71 Total Due for "Interest," online, as of November 30, 2022.

18. RI OCSS refused to provide Seguin any accounting explanation for how RI OCSS calculated the ever-changing very large sums of alleged arrears of $93,214.56 or $104,185.98 or RI OCSS's claims for interest that was already waived by agreement for $75,638.00 or $73,000.00 or $55,000.00 or $75,623.71 despite Seguin's over twelve requests to RI OCSS.

Collecting child support by arbitrarily "taking interest off the system" and "putting interest

This conduct is outright illegal, unconstitutional, and willful.  It is illegal, unconstitutional

and willfully in bad faith to collect child support from Plaintiff in Texas to Plaintiff's

detriment and economic harm, in this manner that is prohibited by common law, by due

process, and by interstate commerce regulatory statutes such as the Deceptive Trade

Practices Act and the Fair Debt Collection Practices Act for the private sector.  The Fair Debt

Collection Practices Act mandates that the collector provide an itemization of the current

amount of the debt that reflects interest, fees, payments, and credits since a particular date

that the debtor may be able to recognize or verify with records.  At the very minimum, RI

OCSS is similarly required to provide Seguin the same itemization of any amount it claims is

owed that reflects interest, payments, and credits, which Seguin is entitled to by law and by

constitutional due process guarantees.  Instead, not only did RI OCSS breach its duty to

Seguin, breached the contract with Seguin, but additionally manipulated the accounting of

arrears calculations, illegally kept at least six sets of books that produced at least six

different very large amounts in arrears while concealing and withholding from Seguin the

itemization of any amount it claims is owed that reflects interest, payments, and credits,

denied and violated Seguin's due process rights from November 2021 to the present,

breached the contract with Seguin subsequent to Seguin's payment of the agreed upon

payoff amount, then seized her properties without probable cause for "interest" claims that

were already waived, then withheld from Seguin access to her file that should contain the

itemization of any amount RI OCSS claims is owed (RI OCSS's conduct is similar to the

conduct of abusive and predatory debt collectors who withheld from consumers proof or

itemization of claimed debt owed, which Congress addressed by enacting the Fair Debt

Collection Practices Act for the protection of consumers from predatory debt collection):

19. In or about November 2021, RI OCSS gave Seguin's Texas Attorney the contact information

for her account's "case agent," an agent named Karla Caballeros ("Caballeros"), for Seguin

to contact directly in order to obtain requested information on arrears owed.

20. After two months of stonewalling by RI OCSS who refused to discuss Seguin's case with

Seguin's Texas Attorney and conditioning Seguin's access to arrears information by

discussion with only herself directly and without counsel, Seguin had no choice but to

directly contact on her own the RI OCSS case agent Caballeros whose phone contact RI OCSS

gave her Texas attorney for Seguin to call to pay off child support in full.

21. On or about December 6, 2021, Seguin telephoned Caballeros and again reiterated in good

faith that she wanted to pay off arrears in full.  Caballeros, acting as Meyersiek's agent and

per instruction by Tighe, directed Seguin to log on to her RI OCSS online account for the first

time, and told her to pay off the Total Arrears Due figure shown online of $93,214.56 as of

November 30, 2021.  $0.00 Interest was recorded on Seguin's online account as of

November 30, 2021.  The $0.00 Interest displayed by RI OCSS was represented as the waiver

of interest by Meyersiek.  Caballeros also told Seguin that Caballeros also has access and

can simultaneously view Seguin's online account as well as the published information

contained therein.  Seguin justifiably relied on the representation by Caballeros, whom RI

OCSS represented was Seguin's "account case manager" and the published written

information displayed on her RI OCSS online account to be true, complete, and accurate

with no other material facts withheld, omitted or concealed.   After RI OCSS's and

Meyersiek's deprivation of Seguin's representation by counsel in her good faith dealing with RI OCSS to pay off her child support account, RI OCSS had a special duty to Seguin entering into agreement to pay off child support, unblock her passport renewal and close her child support case.

22. On or about December 6, 2021, Caballeros communicated to Tighe of Seguin's intentions to pay all arrears in full. Tighe in turn called Meyersiek's attorney "to advise, and to discuss if Meyersiek wants the interest put back on the case." Meyersiek, through his private lawyer, Barbara Grady, told Tighe, acting as Meyersiek's agent, that he agreed to waive interest to get Seguin to pay a lump sum payment of $104,185.98.[10] Tighe met with other aforesaid RI OCSS actors, Monique Bonin and Frank DiBiase, acting as Meyersiek's agent, to discuss details on RI OCSS brokering the contract.[11]

23. On the early morning of December 7, 2021, at approximately 8:47 a.m., Caballeros emailed Seguin saying "Accounting says to pay $104,198.98" with bank wire instructions directing Seguin to pay off all arrears in one lump sum to RI OCSS's bank account for child support collections[12]. Upon information and belief, Tighe designated Caballeros be the front person interface to broker the deal with Seguin, while he led the brokering of the deal. Seguin asked Caballeros what was the extra $10,971.42 on top of the online Total Arrears $93,214.56 (as of November 30, 2021) for ($93,214.56 was displayed on her online account that Caballeros represented only the day before as the total arrears due). Caballeros told Seguin that it was for "medical" that was not included in the $93,214.56 Total Arrears

---

[10] Per John Langlois, Deputy Chief Counsel of RI OCSS representation at RI EOHHS Appeal Office Prehearing Conference on October 5, 2022; Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.
[11] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.
[11] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.
[12] Email from Caballeros to Seguin, dated December 7, 2021 at 8:47 a.m.

shown on Seguin's RI OCSS online account they both reviewed together just the day before.
Justifiably relying on the written advisement from RI OCSS's Caballeros's email
representation that RI OCSS's "Accounting" Department "says," Seguin in good faith
accepted and agreed, and paid $104,198.98 in one lump sum to pay off child support
immediately that day on December 7, 2021.  Seguin accepted the $104,185.98 lump sum
payment in consideration of waiver of interest and executed on the contract on the same
day, paying by bank wire transfer to RI OCSS's support collection bank count at Citizens
Bank.  Additionally, Seguin in good faith communicated with Caballeros of RI OCSS
confirming her payment by wire transfer.  Seguin in good faith finalized, executed, and
communicated to RI OCSS her execution of the contract to pay off arrears in full.

24. In good faith, subsequent to making her bank wire transfer, Seguin asked Caballeros on and
    about December 7, 2021 when Seguin would see the posting of the lump sum payment of
    $104,185.98 on her RI OCSS online account.  Caballeros told Seguin that due to the
    upcoming Christmas and New Year holidays, it may take up to two months for it to post for
    her to see it.  Seguin justifiably relied on RI OCSS's representation at the time.  Upon
    information and belief, this misrepresentation was calculated to put Seguin off something
    being wrong, to allow RI OCSS, acting as Meyersiek's agent, to subsequently immediately
    and clandestinely lien and levy Seguin's property without notice or disclosure to Seguin with
    impunity.

25. Subsequent to Seguin's payment of the large lump of $104,185.98 in consideration of Meyersiek waiving interest, Meyersiek "changed his mind about waiving interest,"[13] in breach of contract. Meyersiek communicated to Tighe to "put the interest back on the system." Unbeknownst to Seguin, and according to Seguin's RI OCSS Case Tracking Record, Tighe "put the interest back on the system" immediately, in breach of RI OCSS's payoff contract with Seguin, all the while acting to ensure Seguin's wire transfer payment of $104,198.98 would <u>not</u> be reversible. RI OCSS's failed to notify Seguin of Meyersiek's breach of contract that RI OCSS itself brokered, accepted, and entered into with Seguin as a lump sum payoff in consideration of waiver of interest, and instead ensured that Seguin's pay off lump sum payment of $104,185.98 was NOT reversible, showing no regard for Seguin's rights. Meyersiek and RI OCSS, by and through Tighe, kept Seguin's payment, and put interest back on the system without disclosing to Seguin their collective breach of contract and actions. Unbeknownst to Seguin, and according to Seguin's RI OCSS Case Tracking Record, Kevin Tighe made entries on December 9, 2021 that the funds of Seguin's $104,185.98 bank wire payment arrived, and immediately Tighe put into action plans to lien Seguin's bank account from which the bank wire transfer was made on the same day Seguin's funds arrived, December 9, 2021[14]. This immediate contract breach occurred less than forty-eight (48) hours after Seguin's bank wire payment in execution of the contract. This goes to show the intent and states of mind of the Defendants.

---

[13] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe; Per John Langlois, Deputy Chief Counsel of RI OCSS representation at RI EOHHS Appeal Office Prehearing Conference on October 5, 2022
[14] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.

26. Unbeknownst to Seguin, on December 8, 2021 upon receipt of Seguin's bank wire transfer, Wendy Fobert ("Fobert") made several accounting adjustments to Seguin's account and made entries in Seguin's account on December 9, 2021: "correct CP medical arrears as interest of $6,028.75 was added to principal in error. Released $104185.98 wire transfer received 12/08/21 to NON FIP Principal $93214.56, CP Medical Principal $8675.00 and Medicaid Principal $2296.42."[15]  At all times, Seguin never received any communication or disclosure or explanation of this error and adjustment from Fobert, or Caballeros, or Tighe, or anyone at RI OCSS.  The aforementioned-Defendants have a duty to disclose accounting adjustment explanations when there appears to be an error for $6,028.75 which is not a small amount.  Even more troubling, Seguin is unable to ascertain with certainty what these "errors" and accounting adjustment and allocations are for or to their accuracy because RI OCSS refuses to this day to release to Seguin her case file's accounting records with itemization of the amounts RI OCSS claims is owed, that reflects interest, payments, and credits since a particular date that Seguin may be able to recognize or verify with records, despite Seguin making over twelve (12) account record requests.  Seguin has no way to validate any of the alleged arrears.

27. Unbeknownst to Seguin, on December 10, 2021, Adam Dias at RI OCSS made the entry in Seguin's account that says "Made adjustment to correct accidental adjustment that made CP medical negative. It is supposed to be $6,028.75."[16]  Again, multiple undisclosed and unexplained errors by the accounting department of RI OCSS occurred in succession that were never disclosed to Seguin.  Seguin is entitled by right to review RI OCSS's book-keeping

---

[15] Per RI OCSS Case Tracking Case History Documentation entry by Wendy Fobert dated December 9, 2021.
[16] Per RI OCSS Case Tracking Case History Documentation entry by Adam Dias dated December 10, 2021.

of her account.  At all times, Seguin never received any communication or disclosure or

explanation of this error and adjustment from any of the named Defendants.  Seguin is

unable to ascertain with certainty what these "errors" and accounting adjustment and

allocations are for or to their accuracy because RI OCSS refuses to this day to release to

Seguin her case file's accounting records after over twelve (12) account record requests.

28. Unbeknownst to Seguin, Tighe, on December 14, 2021, cut a check for Meyersiek of

Seguin's payment.[17]  Tighe's entry in Seguin's RI OCSS Case Tracking record history omits

specifying the amount on the check, therefore, Seguin is, at this juncture, unable to

determine how much the check was for due to RI OCSS's continuous denial of Seguin's right

to access accounting calculation of alleged arrears in her own case file.

29. Unbeknownst to Seguin, on December 14, 2022, Tim Flynn ("Flynn"), another RI OCSS

employee acting on behalf of Meyersiek, "mailed admin. Subpoena and request for info" to

Seguin's bank.[18]  This act was never communicated to Seguin by any of Meyersiek's agents

at RI OCSS.  RI OCSS's adverse actions against Seguin penalizing Seguin after she executed

the contract in good faith lack probable cause for issuances of subpoena into her bank

account or property for "interest" claims that were already waived, per contract, that

involved multiple attorneys with titles "Deputy Chief Counsel" on the side of Defendant RI

OCSS and involved private counsel for Meyersiek, Barbara Grady, Esq.  This waiver of

interest agreed to by RI OCSS and Meyersiek was well informed, valid, and binding.

30. Unbeknownst to Seguin, on January 4, 2021, Tim Flynn ("Flynn"), on behalf of Meyersiek,

and both in breach of contract, spoke with "Marie" at Seguin's bank in Texas from which

---

[17] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe on December 14, 2021.
[18] Per RI OCSS Case Tracking Case History Documentation entry by Tim Flynn on December 14, 2022.

she wired the lump sum payoff payment to RI OCSS regarding a subpoena that Flynn had sent to the bank regarding Seguin's bank account. This act was never communicated to Seguin by Flynn nor any of Meyersiek's agents at RI OCSS.[19]

31. Unbeknownst to Seguin, on January 12, 2022, Flynn received letter from Seguin's bank stating Seguin has a checking account at the bank. Flynn immediately "created an offline notice of intent to lien Seguin's account. Faxed and mailed copies to Seguin's bank. Will notice Seguin via mail at the ten day mark."[20] This act was never communicated to Seguin by any of Meyersiek's agents. Seguin never received the Notice of Lien. Upon information and belief, Flynn never mailed the requisite notice so as to ensure the continuation of clandestine seizure of Seguin's property and taking advantage of the fact and their knowledge that Seguin recently had undergone surgery. This belief is reasonably formed on the basis that there is no entry by Flynn at the ten day mark on or about January 22, 2022 of actually noticing "offline" Seguin via mail at the ten day mark of RI OCSS's "offline" notice of intent to lien made on January 12, 2022, showing among other things, the consistent pattern of reckless disregard for Seguin's rights.

32. Unbeknownst to Seguin, on February 21, 2022, Flynn "mailed and faxed OFFLINE RI OCSS's perfected notice of lien to Seguin's bank regarding Seguin's account. Copy mailed to Seguin."[21] Seguin never received the "offline" Notice of Perfected Lien. RI OCSS's failure to send notice to Seguin of RI OCSS's "offline" generated notices of liens is calculated to deprive Seguin of her due process right to refute and dispute the notice of lien on her

---

[19] Per RI OCSS Case Tracking Case History Documentation entry by Tim Flynn on January 4, 2022.
[20] Per RI OCSS Case Tracking Case History Documentation entry by Tim Flynn on January 12, 2022.
[21] Per RI OCSS Case Tracking Case History Documentation entry by Tim Flynn on February 21, 2022

property.  Upon information and belief, Flynn never mailed the requisite notice so as to
ensure the continuation of clandestine seizure of Seguin's property, and taking advantage
of the fact that she recently had undergone surgery.  This is reasonably formed on the basis
that there is no entry by Flynn at the ten day mark on or about January 22, 2022 of actually
noticing Seguin via mail at the ten day mark, showing among other things, the consistent
pattern of reckless disregard for Seguin's rights.

33. Unbeknownst to Seguin, Tighe and other agents of Meyersiek at RI OCSS sometime after
Seguin's payment of $104,185.98 programmed the system to place a lien on any and all
Seguin's property that the Title IV-D Agency program participates in.  RI OCSS contracted
with several third-party organizations, corporations and entities for the purpose of
identifying Seguin's and non-custodial parents' properties for the collection of child support
arrears.  However, RI OCSS engaged said third parties for the collection of interest arrears
that were already waived by Meyersiek in consideration of Seguin's lump sum payoff
payment, in breach of good faith contract with Seguin.  RI OCSS's contracting of third
parties for the purpose of seizing Seguin's properties for interest that was already waived in
breach of contract was never communicated to Seguin for the purpose of ensuring the
Defendants could continue to covertly seize Seguin's property.

34. The RI OCSS's Case Tracking System records on March 4, 2022 that on March 3, 2022
"KWS1263 <u>created</u> the lien off insurance asset form."[22]  KWS1263, upon information and
belief, is the code name entered by an unnamed person to contract with third parties,

---

[22] Per RI OCSS Case Tracking Case History Documentation entry dated March 4, 2022.

pursuant to Tighe's instruction, to place liens on Seguin's property.  This was never

communicated to Seguin by any of Meyersiek's agents at RI OCSS.

35. Out of the blue, Seguin received in the mail on March 15, 2022, a Notice of Intent to Lien by

RI OCSS on her insurance property dated March 3, 2022, for the very large amount of

$75,638.00 without any explanation, no accounting and no documented justification.

36. On April 1, 2022, Seguin emailed a timely written appeal to RI OCSS of the March 3, 2022

lien.  Upon information and belief, RI OCSS forwarded Seguin's written appeal to the Rhode

Island Executive Office of Human and Health Services ("RI EOHHS") Appeals Office.  RI

EOHHS is designated as the State's Single Agency under Title IX of the Social Security Act

that has been authorized by the State to hear all appeals stemming from actions by several

state agencies, including enforcement actions by the RI OCSS.

37. A Perfected Notice of Lien in the amount of $75,638.00 was created on April 4, 2022, per

the record entry made on April 5, 2022 by "KWS1263" who created the lien[23], in violation of

applicable Federal and state laws, rules and regulations, as Seguin made timely written

appeal.  This was never communicated to Seguin by any of Meyersiek's agents at RI OCSS.

On or about April 8, 2022, Seguin received in the mail this April 4, 2022 perfected lien and

emailed RI OCSS Caballeros in protest, requesting the removal of the Perfected Lien, since

Seguin had timely appealed the March 3, 2022 notice of intent to lien.

38. Instead of removing the Perfected Lien pending the outcome of Seguin's appeal, Seguin

received an email from Paul Gould ("Gould"), Chief of Legal Services of RI OCSS, on April 11,

2022 saying he sent Seguin's insurance company to remove the lien.  However, Seguin's

---

[23] Per RI OCSS Case Tracking Case History Documentation entry dated April 4, 2022.

insurance did not receive this alleged removal communication from Gould.  Nor is there any

record of Gould's removal of the perfected lien in Seguin's Case Tracking Record.[24] (The

entries do not show any entry by Gould on or about April 11, 2022.  The next entry would

be dated April 28, 2022, recorded by Flynn, saying he mailed notice of levy to Seguin's bank

regarding a lien on Seguin's bank account, copy mailed to Seguin.  Again, as this mailing was

done "offline," Seguin never received a copy of a notice of levy from Flynn).

39. Upon information and belief, Gould misrepresented to Seguin and never removed the

perfected lien, as John Langlois ("Langlois"), counsel of record for RI OCSS for the duration

of the appeal, and who is the Deputy Executive Legal Counsel of RI OCSS, would later say at

the October 5, 2022 Prehearing Conference to the RI EOHHS Appeals Executive Hearing

Officer, Deb DeStefano ("EHO"), that the perfected lien was still in place and that the

"system" had generated it because Seguin's written appeal was sent on April 1, 2022, which

did not give RI OCSS time to make adjustments in the system to stop the perfected lien from

going out.  Langlois even objected to the removal of the April 4th Perfected Notice of Lien on

October 5, 2022, showing that the Notice of Perfected Lien was never removed, as

misrepresented by Gould.  Indeed, on October 14, 2022 RI OCSS issued a Recission of the

Notice of Perfected Lien, showing Gould did not remove the April 4th Perfected Notice of

Lien.

40. Further, on October 14, 2022, Langlois issued a Notice of Recission of Notice of Lien AND

Notice of Perfected Lien, implying that Gould never removed the perfected lien, implying he

lied to Seguin of its removal on April 11, 2022.  Obviously, there is no need to issue a

---

[24] Per RI OCSS Case Tracking History Documentation for the month of April 2022.

recission of the perfected lien on October 14, 2022 if the Perfected Lien was already

removed in April 2022 as Gould claimed.

41. From April 1, 2022 to October 5, 2022, the counsels of record for RI OCSS during Seguin's RI

EOHHS administrative appeal of the March 3, 2022 lien for $75,638.00 were John Langlois

and Paul Gould, to whom Seguin made over ten requests for her case file records pursuant

to her right to her case file, as outlined in RI regulation 210-RICR-10-05-2 *et seq*. and per

federal regulations for the single state agency fair hearing (RI EOHHS Appeal Fair Hearing)

pursuant to 42 CFR sec 431.242(a)(1) and 42 CFR sec 431.242(a)(2) that set the procedural

requirement for a single state agency EOHHS's Appeal Fair Hearing, stipulating that the

appellant, Seguin, has  the right to his/her case file and must have access to her case file;

without access to her case file, Seguin's exercise of the procedural right to question and

refute the agency's evidence set forth in 431.242€ is then deprived.  This is consistent with

discovery.  431.202 requires that the State Plan must provide sections 431.205 through

431.246 of this subpart are met.  In addition to procedural safeguards, the aforesaid

sections set forth the authority to provide corrective actions against errant agency conduct.

42. However, Meyersiek's agents, the RI OCSS actors, denied Seguin access to her case file over

and over again for over ten times.  The RI EOHHS continued scheduled hearings for three

times, the maximum number allowed by regulation for good cause shown, namely due to

the fact that RI OCSS had outright denied or ignored Seguin's record requests and denied

Seguin access to her records, throughout the appeal process.

43. Seguin submitted to the RI EOHHS Appeals Office evidence of the good faith contract Seguin

entered into with Meyersiek that was brokered, accepted, and agreed to in contract by RI

OCSS in December 2021, whereby Seguin paid off her child support in full in consideration of Meyersiek's waiving of interest, including submissions of the screenshots taken of her online account on December 6, 2021 when she was told by RI OCSS to log on to her RI OCSS online account by Caballeros representing that it showed $93,214.56 as total arrears due and $0.00 of Interest representing Meyersiek's waiver of interest, as of November 30, 2021; Seguin additionally submitted the email dated December 7, 2021 where RI OCSS told her "accounting says" to wire transfer $104,185.98 in one lump sum to pay off child support in full; Seguin further submitted bank transfer records evidencing her wire transfer of the agreed upon amount on December 7, 2022, showing Seguin's execution of the contract.  RI OCSS produced no documentation throughout the appeals process of any kind, be it documentation in support of their notices of liens on Seguin's property issued without probable cause, or documentation supporting RI OCSS's claim for interest when interest was waived.

44. The RI EOHHS Appeals Office and EHO scheduled a Prehearing Conference on October 5, 2022 for the purpose of addressing RI OCSS obstruction of access to Seguin's case file.

45. At the October 5, 2022 Prehearing, the EHO stated that based on Seguin's evidentiary submissions, the burden of proof lies with RI OCSS to show arrears of $75,638.00 on the lien is owing.  Only then did Langlois say the following:

> "EHO: The agency will have to submit proof of the allegation for
> arrears to support their position.
> Langlois: The reason why I asked earlier whether Mary spoke to
> Karla after she made the payment was because there was a change
> of circumstances right after that.  I don't know if anyone in my
> agency had ever explained that to Mary.
> Seguin: Wait a minute, wait a minute,

EHO: Wait Mary, I know what you asked for, let me get to what John just said, so John, you said there was a change in circumstances subsequent to her making a payment but before the notice of lien went out?

Langlois: Yeah.

EHO: OK, so

Langlois: Can I just back up and explain what happened, 99% of this is a misunderstanding

EHO: OK?

Seguin: Including what was on the screenshot, was that a misunderstanding??

Langlois: Can I speak without being shouted over?

Seguin: I am flabbergasted, really.

Langlois: What happened in this case is when Mary's representative, her attorney, called us in late November 2021, and said she wants her passport released and what does she have to do to release her passport, they put her in touch with Karla who gave her the $104,185.98  number.  Where that number came from, was one of our attorneys contacted the custodial parent, Gero Meyersiek, so we contacted his attorney, it wasn't me, it was someone in my office, and said if she's willing to make a $104K to pay off the principle, would you agree to waive the $73K in interest? He said yes.  So Karla notified Mary that if she paid the $104K, it would be paid in full because he was wiling to waive the interest and accept just the principal.  What happened was the day after Karla spoke to Mary to wire in the $104K the attorney for Mr. Meyersiek contacted us again and said he changed his mind, please put the interest back on the system, so we did.  So the number that was given to her on the day it was given to her was correct, the $104K, because he was waiving the interest, but then changed his mind, so we put the interest back on the system, because he was waiving the interest, and that interest was put back on the system and that's why the system is now saying she owes $73K.  That's why in March when the system saw that she had some sort of personal injury insurance in the system, our system was showing she owed $73K so we issued the lien.  But that was what happened, he changed his mind the next day and that's what messed up the numbers. So that's how all this happened,it was a pure misunderstanding, I don't know whether anyone has ever explained that to Mary how that happened.

EHO: OK, Mary, did anyone ever explain that to you before?

Seguin: No. No one ever explained any of that.  This is why I am asking for my case file, I think this is more basis to ask for my entire case file from 2020.  It's news to me for example and its new

information to me that your office's lawyer would not talk to me
directly but would be picking up the phone and calling the attorney
for the custodial parent.  And then not saying you were doing this
deal.  I never offered $104K.  You had determined this number, and
that's why I am looking for documentation as to whether this is
something you guys do in every case.

EHO: OK, John, are you intending to submit then, the
documentation showing the full balance, which would include the
principle and the interest before she paid the $104k, and then what
happened after, you're prepared to submit documentation to show
everything that you said just happened.

Langlois: Yes.  I can show the account balance before he agreed to
waive the interest.  And I can show you the account balance after
she made the payment. And then when we put the interest back on
the system.

EHO: And you're going to testify as to why it all occurred, I mean
basically what you just told us.

Langlois: Yes.

Seguin: But the screenshot on December 6th showed $93K."

46. On or about October 11 to October 13 2022, after the October 5, 2022 Prehearing

conference, Langlois emailed Meyersiek's private lawyer, Barbara Grady, and again asked if

Meyersiek "would waive interest to resolve the case."[25]  Grady emailed that "Meyersiek is

willing to accept $55,00 which is approximately 50% of what is owed."  Langlois had

represented at the October 5, 2022 Prehearing that interest was $73,000 in December

2021, therefore, consistent with a pattern of made up numbers whereby neither Meyersiek

nor his RI OCSS agents would show Seguin the accounting calculations of alleged interest

arrears, clearly Defendants manufacture and fabricate large varying and unjustified

amounts of total interest at all times: obviously $55,000 is not half of $73,000.  To this

email, Langlois replied that "I think we both know that there is zero possibility that Mary

---

[25] Langlois emails dated October 9 to October 13, 2022.

Seguin will agree to pay ANY interest."  None of this correspondence was communicated to Seguin.  Consistent with all RI OCSS's conduct prior to the October 5, 2022 Prehearing, Langlois also never explained or disclosed his own correspondence with Meyersiek about waiving interest, establishing a consistent pattern of behavior of concealment and misrepresentation, and with all collective actions taken together, deceit to Seguin. Moreover, Langlois never provided Seguin with the accounting he promised to at the Prehearing either.  Upon information and belief, similarly to Tighe, Langlois met with the Defendants and discussed the plan with Meyersiek, through telephonic correspondence offline to avoid creating a paper trail, to type up a Notice of Recission on October 14, 2022 that claimed there are unspecified errors in the Notices of Liens, but arrears are still owing and it will continue to enforce arrears,[26] calculated to deprive the EOHHS Appeals Office of jurisdiction so that he would not have to testify to Meyersiek's waiving interest, the breach of contract, bad faith and subsequent conduct and actions of Meyersiek's agents at RI OCSS in the RI EOHHS Appeals Hearing.  Langlois filed a motion to dismiss Seguin's RI EOHHS administrative appeal, pleading that the number $75,638.00 on the lien simply "no longer exists," just like that, without explanation and with impunity.  RI OCSS's actions show they disregard any duty owed to Seguin to explain or justify their very large alleged arrears numbers in the substantial levels of $73k or $75K  that change or subsequently refuted by them, at will.  It should be noted that the number $75,638.00 on the lien does not match the $73,000 interest that Langlois repeatedly claimed was on the system before and after Seguin made the $104,185.98 in December 2021, showing that RI OCSS's refusal to show

---

[26] October 14, 2022 Notice of Recission of Lien – See attached Exhibit.

Seguin's case records is motivated by, among others, cover up of manufactured,

manipulated and false numbers for interest claims which Meyersiek had already waived in

consideration of Seguin's lump sum payment of $104,185.98 as per contract.

47. Tighe and all relevant actors of RI OCSS acting on behalf of Meyersiek, never communicated

to Seguin about Meyersiek "changed his mind" after Seguin accepted and paid the

$104,198.98 in lump sum per the agreement brokered by Meyersiek's agent, RI OCSS, from

December 7, 2021 to October 5, 2022.  RI OCSS Case Tracking Records and RI OCSS conduct

show Tighe and RI OCSS actors and Meyersiek never intended to disclose Meyersiek's

breach of the contract: Tighe's record entries never show he saw a need to inform Seguin of

anything his dealings with Meyersiek and his private lawyer Barbara Grady; instead,

unbeknownst to Seguin, his entries and subsequent actions show he only cared about and

acted to ensure getting Seguin's $104,185.98 payment in hand, set in motion actions to lien

Seguin's bank account as early as December 9, 2021 as soon as the $104,185.98 was in hand

by asking Tim Flynn to subpoena her bank account for the purpose of placing a lien on it[27];

the same record shows, unbeknownst to Seguin, Tim Flynn issuing "offline" a notice of lien

on January 12, 2022 against Seguin's bank account from which she made the bank wire

transfer payment; Tim Flynn's entry comment says he mailed the notice himself, but Seguin

never received the notice of lien in the mail;  Tighe, an attorney who, upon information and

belief based on website information, is a Deputy Chief Counsel of RI OCSS and acting as

Meyersiek's agent, consciously and covertly put in place actions to lien Seguin's bank

account and property, to conceal and cover up from Seguin the immediate breach of the

---

[27] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.

contract brokered by RI OCSS (that he led, as the attorney versed in contract agreements and the law) acting as Meyersiek's agent, and consciously hid from Seguin of their breach in order to allow them to pocket the $104,185.98 lump sum payment and go about placing liens on Seguin's property without Seguin's knowledge.  Meyersiek took Seguin's $104,195.98 payment and kept it, all the while his agents at RI OCSS went about attaching liens on Seguin's bank account from which she made the wire transfer payment the day Seguin's payment was in hand. Meyersiek and RI OCSS never communicated or noticed in any shape or form to Seguin regarding their active enforcement of placing liens on any and all property of Seguin's they could find for "interest" that Meyersiek had waived.

48. To date, there is no documentation available to Seguin as to what amount in interest was "put back on" the system in Seguin's case file by Tighe and Meyersiek, but the RI OCSS's system generated a placement of lien on Seguin's person injury insurance claim for the amount of $75,638.00 on March 3, 2022.

49. On November 29, 2022 the RI EOHHS Appeals Office issued judgment dismissing Seguin's appeal citing the Recission of the liens caused RI EOHHS to lose jurisdiction over the issue when the adverse lien action by RI OCSS was withdrawn.

50. On December 1, 2022, Seguin filed a petition to the Secretary of RI EOHHS, Ana Novais, pursuant to the RI Access to Public Records Act, for her case file records.

51. On December 3, 2022, Seguin logged on to her RI OCSS online account and discovered that RI OCSS posted a Statement of Account as of November 30, 2022, that says $75,231.00 for interest, recorded $0.00 payment in December 2021, and no where in her account records her $104,185.98 payment made on December 7, 2021.  Shocked at the prima facie

accounting fraud, Seguin filed on December 5, 2022 a Rule 59 Motion for Hearing to the RI

EOHHS Appeals Office, attaching the screenshot of the online account taken on December

3, 2022, based on newly discovered evidence.  Langlois filed objections claiming December

2021 evidence is not newly discovered evidence and that it had been available to Seguin.

This self-incriminates himself that the prima facie fraudulent recording of $0.00 payment

for Seguin's $104,185.98 payment in December 2021 was available to HIM for the duration

of Seguin's Appeal.

52. Seguin filed on December 9, 2022 a Rule 60 Motion for Default Judgment based on the

fabrication and manufacturing of accounting records in Seguin's file, and on December 14,

2022 filed a Rule 26 and Rule 37 Motion for sanctions.  Langlois filed objections to all

Seguin's motions.

53. On January 10, 2023, the RI EOHHS issued judgment indicating that RI EOHHS lacked

jurisdiction over Seguin's appeal subsequent to RI OCSS's recission of the liens, categorized

as the "adverse actions."  The state administrative appeal thus concluded.

54. On December 13, 2022, Lisa Pinneacult, another lawyer at RI OCSS sent Seguin an email

saying that Seguin's RI APRA request for records was denied.  However, her case records

would be release before December 31, 2022.

55. On December 22, 2022, Lisa Pinneacult released a partial record of Seguin's file that

included the RI OCSS case history tracking record in Seguin's file that is referenced

throughout this Complaint.   However, Pinneaucult emailed Seguin that RI OCSS withheld all

records related to telephonic communications, including notes made of phone

conversations that Tighe had with Meyersiek and his private attorney Barbara Grady in

December 2021 regarding Meyersiek's waiver of interest, taking interest off the system and putting interest back on the system.  Also withheld from the record release are the critical accounting records showing how interest calculations were made by RI OCSS, including records showing the "interest before Seguin made her payment," "interest when Seguin made her payoff payment," and "interest subsequent to Seguin's payoff payment" that Langlois agreed to provide Seguin and the Hearing Officer in the telephonic Prehearing Conference on October 5, 2022.  Instead, RI OCSS purposely released a pile of pleadings that were submitted by both Seguin and RI OCSS to the RI EOHHS Appeals Office during the agency administrative appeal hearing from April 2022 to December 2022, rendering the record release purposely non-responsive to Seguin's record request, since RI OCSS knew and should have known that Seguin did not ask for these appeal pleadings that Seguin already has copies of, but that material and central to affording Seguin her right to refute RI OCSS's property seizure for "interest" that was already waived, are the records Seguin has a right to access to in her case file those records relating to RI OCSS's brokering of the contract with Seguin whereby interest was waived in consideration of Seguin's lump sum payoff payment for the very large sum of $104,185.98.

56. RI OCSS officials at all times acted as Meyersiek's agent: Tighe, Caballeros, Fobert, Adams, Flynn, Dibiase, Bonin, Langlois, Gould and Pinsonneault.

57. Barbara Grady at all times acted as Meyersiek's agent.

58. Meyersiek's agents, RI OCSS officials, Tighe, Flynn, Langlois, Gould and Pinsonneault, are attorneys obligated by higher standards of duty of care, and as such committed professional negligence.

59. RI OCSS officials are government officials that owe Seguin, the noncustodial parent, specialty duty. RI OCSS owes Seguin, the noncustodial parent, special duty.

60. After depriving Seguin of her Texas Attorney, as the RI OCSS brokers of Seguin's contract with Meyersiek, RI OCSS officials assumed dual agent duty to Seguin, as well as special duty as government officials.

61. RI OCSS officials owe Seguin a fiduciary duty and breached it.

62. RI OCSS contracted with Seguin directly for the $104,185.98 payoff amount with contract term waiver of interest by Meyersiek. RI OCSS breached the contract with Seguin. RI OCSS levied Seguin's property without probable cause, without proper authority under common law and under the laws of the United States and the State of Rhode Island.


## IV.    COUNTS

### COUNT I: BREACH OF CONTRACT

63. Seguin, hereby re-alleges and incorporates by reference all of the preceding paragraphs in this complaint as though fully stated herein.

64. Seguin in good faith entered into agreement with Meyersiek and RI OCSS to pay off her child support in full. Meyersiek's agent, RI OCSS represented to Seguin the amount Meyersiek agreed to for $104,185.98 that waived interest, in a lump sum payment. In so brokering the agreement, RI OCSS accepted, agreed to and the entered into contract with Seguin to the waiver of interest in consideration of the lump sum pay off payment that officials in the RI OCSS's accounting department calculated and determined, in the amount $104,185.98. RI OCSS, as the party collecting child support from Seguin, also acted as agent

to Seguin.  Seguin accepted, agreed to the amount of $104,185.98 that RI OCSS

communicated by written advisement, justifiably and in good faith relied on RI OCSS's

written advisement, and made the payment on December 7, 2021, thereby executing on

the contract.

65. RI OCSS brokered the contract acting as agent to Meyersiek.  Because RI OCSS deprived

Seguin of her Texas Attorney, RI OCSS also acted as Seguin's agent in a dual agent capacity.

66. Subsequent to Seguin making payment, Meyersiek pocketed Seguin's money, and "changed

his mind" in breach of contract.  Moreover,  Meyersiek told his agents at RI OCSS to put the

interest back on the system in breach of contract, and his agents deliberately concealed the

breach from Seguin in disregard to Seguin's rights, in order to covertly lien Seguin's

properties just two days after Seguin made her payment, in breach of contract.

67. Meyersiek breached the contract with Seguin and is liable for damages.

68. RI OCSS breached the contract with Seguin and is liable for damages.

69. Defendants Tighe, Dibiase, Bonin, Fobert, Caballeros and Flynn individually breached the

contract with Seguin and are liable for damages.

## COUNT II: BREACH OF IMPLIED CONTRACT

70. Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

71. Meyersiek is in breach of implied contract with Seguin and liable for damages.

72. RI OCSS is in breach of the contract with Seguin and is liable for damages.

73. Defendants Tighe, Dibiase, Bonin, Fobert, Caballeros and Flynn individually are in breach of

the implied contract with Seguin and are liable for damages

## COUNT III: UNJUST ENRICHMENT

74. Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

75. Meyersiek has been unjustly enriched by pocketing Seguin's large lump sum payment of $104,185.98 paying off child support in full, then "change his mind" without any consideration to Seguin, tells his agents at RI OCSS to clandestinely put interest back on the system against Seguin, both without any disclosure to Seguin, and in just two days after Seguin's December 7th payment in 2021, schemed to lien Seguin's properties without alerting Seguin so as to allow them to seize Seguin's property underhandedly under color of law and without due process afforded to Seguin.

76. Had Seguin been notified by Meyersiek or by RI OCSS defendants of Meyersiek's "change of mind" contract breach subsequent to her payment, she could have recalled her payment to put her back in a position of equity, as well as defended herself from the illegal liens placed on her properties for interest that was already waived.  Meyersiek's and his RI OCSS agents's cover up of his and RI OCSS's breach by nondisclosure allowed RI OCSS and RI OCSS individual defendants to clandestinely place liens on Seguin's properties as early as two days after Seguin made the substantial payment; Meyersiek's and his RI OCSS agents's cover up of his/their breach by denying Seguin access to her own case file records that would expose the breach with concrete evidence and expose their illegal lien placements and levy was calculated to obstruct and thwart Seguin's right to refute the unjustified liens and to advance Meyersiek's objective to fraudulently deprive Seguin of her property based on

<u>waived</u> interest claims and without due process of law.  In essence, RI OCSS is punishing Seguin for Meyersiek's and RI OCSS's breach of contract.

77. Meyersiek has been unjustly enriched by keeping Seguin's very large lump sum payoff payment of $104,185.98 in consideration of Meyersiek's waiver of interest, all the while levying Seguin's properties that they could get their hands on for unsubstantiated and unjustified $75,638.00 for interest after he already waived interest, without the proper authority under common law and under the laws of the State of Rhode Island.

78. Meyersiek's RI OCSS agent lawyer Tim Flynn never noticed Seguin of liens on her bank account and clandestinely levied the entire content of Seguin's bank account for Meyersiek's alleged interest claims when they both know Meyersiek already waived claims for interest.  Meyersiek levied Seguin's property without proper authority under common law and under the laws of the State of Rhode Island.

79. Seguin is entitled, in this action in equity, for the restitution, return or refund of all the monies that Meyersiek has received through unjust enrichment.


**COUNT IV: MISREPRESENTATION**

80. Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

81. Seguin justifiably relied on written and oral representations made by Meyersiek's RI OCSS agents who brokered the contract.  Seguin justifiably relied on the written and oral representations made by Meyersiek's RI OCSS agents who are government officials who owe Seguin a special duty and fiduciary duty to disclose material facts about "taking

$73,000 interest off the system" and to disclose Meyersiek's contract breach subsequent to Seguin's payment whereby he conveniently "changing his mind." RI OCSS failed to disclose its own breach of contract with Seguin by accepting Meyersiek's breach of contract with Seguin, and actually started to "enforce" collection of interest that Meyersiek had already waived.   Meyersiek's RI OCSS agents are in breach of public fiduciary and duty of loyalty by misrepresenting the calculation of arrears owed published on Seguin's online account. Seguin justifiably relied on RI OCSS's misrepresentations, false accounting/manipulations, omissions and concealments of material facts, and concealments of her case file to her detriment.  Instead of enforcing the terms of its own contract with Seguin, RI OCSS instead punishes Seguin by aiding and abetting Meyersiek's false claims for interest that he already waived.

82. Seguin has sustained economic injury by paying the large lump sum payoff of $104,185.98 as per agreement that Meyersiek immediately breached agreement thereof, and suffered injury by his agents' breach of duty to disclose to Seguin thereof, and suffered economic injury by Meyersiek's agents' subsequent clandestine levy condoned by Meyersiek on the entirety of her bank account for the legally insufficient liens for interest that were already waived by Meyersiek. Seguin has sustained emotional distress and Meyersiek's RI OCSS agents conduct had scandalously broken trust in government.

83. Even as Seguin appealed the only lien notice actually received by her that was automatically generated and sent by the RI OCSS computer system, Meyersiek's agents continued to refuse to give Seguin an explanation of what the lien amount of $75,638.00 was for throughout the administrative appeals process, thwarted and obstructed Seguin's

procedural right to discovery by denying her access to her own case file, and misrepresented to the EHO and Seguin that the accounting records are accurate when all of the arrears figures and payment records are prima facie false: Langlois representing during the Prehearing that the interest was $73,000 before Seguin's payment but the amount on the lien is $75,638.00; Seguin's online interest showing $0.00 as of November 30, 2021 based on RI OCSS, on Meyersiek's order, take interest off the system; recording $0.00 payment for Seguin's $104,185.98 payment in December 2021 in Seguin's RI OCSS online account; filing a motion demanding interest of $81,652.46 sometime in December 2022 when the March 2022 lien amount was $75.638.00; rescinding the $75,638.00 amount on the lien without giving an explanation of error and filing flippant pleadings saying such a large number simply no longer exists with impunity, with no regard for law.

84. Due to Meyersiek's, RI OCSS's, and defendants' individual misrepresentations and omissions, Seguin is entitled to legal and equitable relief, including damages and punitive damages, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT V: NEGLIGENT MISREPRESENTATION

85. Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

86. Due to Meyersiek's, RI OCSS's, and defendants' inidvidual negligent misrepresentations and omissions, Seguin is entitled to legal and equitable relief, including damages and punitive damages, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT IV: INTENTIONAL/FRAUDULENT MISREPRESENTATION

87. Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

88. Meyersiek instructed and condoned his RI OCSS agents' "removing the interest from the system" creating a resultant $0.00 for interest for Seguin to see in her online account so that she never sees the "interest figure" before it was removed.  Meyersiek's agents at RI OCSS continue to conceal this the figure to this day even pursuant to Seguin's RI APRA record request.  The "interest" number has morphed from $0.00 in November 30, 2021 to $75,638.00 on the March 3, 2022 system generated lien, then changed to $73,000 per Langlois's representation to EHO at the Prehearing on October 5, 2022, then again to $75,631.27 in Seguin's online account a year later as of November 30, 2022, then ballooned again to $81,652.49 sometime in December 2022.  This wanton pattern of fabrication of very large arrears numbers that Meyersiek's agent RI OCSS and RI OCSS individual defendants refuse to show the foundational accounting basis for is scandalous.  On its face, an agency's at will "removal" and "put back on" and constantly discrepant very large interest publicly noticed or officially published in writing of allegedly owed interest (that were already waived by Meyersiek in consideration of the large lump sum payoff payment Seguin paid and which Meyersiek kept) without explanation shows knowledge of falsity by the creator, defendant RI OCSS and the individual RI OCSS defendants, by instruction from Meyersiek.  Whether the numbers be published on official RI OCSS online accounts as a Statement of Account as of November 30, 2021 or 2022, on Notices of Liens issued by RI OCSS, representation by counsel made to the EHO at the Appeals Prehearing, or the last undated motion filed by counsel in Family Court, Meyersiek's agent perpetrators intended

to induce reliance under color of law: They publish interest arrears on Seguin's written official online accounts, via written official emails to Seguin to communicate changing arrears amounts from what is published online, use official RI OCSS liens to lien Seguin's bank account and insurance assets attaching a very large arrears sum of $75,638.00, represent verbally by the agency's Deputy Chief Legal Counsel John Langlois to the EHO and Seguin in Seguin's Appeal Prehearing, list another changed interest arrears figure on a written official motion filed with Family Court.  The perpetrators, Meyersiek and his agents at RI OCSS unflinchingly use their office to induce reliance.

89. Seguin's good faith reliance on RI OCSS's and RI OCSS individual defendants' representations inducing Seguin to enter into contract brokered by Meyersiek's agent RI OCSS based on written advisements of official emails and officially published Statement of Account in her online account described above was justifiable, but to her detriment.  Once Seguin discovered something was wrong, Meyersiek through his agents at RI OCSS used their office to thwart Seguin's right to access her case file to discover incriminating evidence of the manipulation of her account by Meyersiek and his agents to misrepresent, conceal and induce her to rely on the fabricated arrears numbers they published, emailed and noticed on official instruments, to her detriment. Abuse of process of very large sums of interest that was already waived constitutes fraud.  Meyersiek and RI OCSS levied Seguin's bank account clandestinely based on interest he had already waived, and his agents who personally brokered the contract, knowingly concealed their clandestinely placement of liens so as to seize her properties illegally under color of law and office.

90. Due to Meyersiek's intentional/fraudulent misrepresentations and omissions, Seguin is entitled to legal and equitable relief, including damages and punitive damages, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT VII: COMMON LAW BAD FAITH

91. Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

92. Seguin, Meyersiek and Meyersiek's agents at RI OCSS have an implied duty to act honestly, in good faith, and fairly when entering in a contract that is material in which Seguin paid off all arrears in one lump sum for a large amount of money.  Seguin in Texas, in good faith, approached RI OCSS through her Texas counsel on her own initiative and expressly stated she sought to pay off all child support arrears.  Seguin was deprived of her right to counsel by RI OCSS's senior counsels (Tighe, DiBiase), acting as Meyersiek's agent, through legally insufficient and bad faith denial to deal with Seguin's Texas counsel, predicating Seguin's wish to pay off arrears on direct dealing with RI OCSS on her own without counsel. Meanwhile RI OCSS's Kevin Tighe initiated contact with Meyersiek's counsel and together demonstrated bad faith manipulation of Seguin's account, "taking interest off the system" and "putting interest back on the system" at will, to mislead Seguin, with no regard to a duty to act honestly, in good faith, and fairly.

93. Throughout, Meyersiek and his agents at RI OCSS breached their duty to act honestly, in good faith, and fairly: Subsequent to Seguin paying off the agreed arrears, Meyersiek immediately told Tighe to "put interest back on the system;" within two days, Tighe initiates subpoena and liens on Seguin's bank account covertly; Meyersiek and Tighe covered up

their tracks by communicating telephonically and concealing their actions and breach, when they have a duty to disclose to Seguin Meyersiek's change of mind breach. Instead Meyersiek pocketed the money and ordered and condoned his RI OCSS agents to cover up their wrong-doing in order to steal from Seguin under color of law and color of the office of RI OCSS, issuing "offline" subpoenas, issuing liens and issuing levy on Seguin's bank account, from which they told her to wire the bank transfer, without notice to Seguin. The only notice of lien Seguin received in the mail is the one that was generated by "the system" on March 3, 2022 to lien Seguin's insurance assets. Their deceit amounts to a bank heist of Seguin's bank account and assets.

94. To cover up their clandestine seizure of Seguin's assets, once Seguin appealed the out-of-the-blue lien of her insurance assets on April 1, 2022, Meyersiek condoned his agents to close rank and deny Seguin access to her own case file during the RI EOHHS Appeals Hearing that would expose their illegal clandestine seizure of Seguin's assets for interest after Meyersiek already waived interest. To this day, it is indeterminable exactly what amount of interest was waived on December 6, 2021, because Meyersiek and RI OCSS individual defendant agents conceal all accounting documentation from Seguin (and even from the EHO), all the while officially noticing a different number at will: $0.00 interest as of November 30, 2021 online account; $75,638.00 interest on the March 3, 2022 lien; $73,000 interest per Langlois at the October 5, 2022 Prehearing (reading off certain notes he had with him), $75,627.31 on the online account as of November 30, 2022; ballooning to $81,652.46.

95. Seguin had to file a petition to the Secretary of RI EOHHS pursuant to the RI Access to Public Records Act to gain access to her case records, and even that was explicitly denied by RI OCSS; the limited record release did not include accounting records, nor telephonic records.

96. Meyersiek and his RI OCSS agents' conduct violate community standards of decency, fairness or reasonableness.  Their bad faith includes the following acts: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

97. Due to Meyersiek's, RI OCSS's, and the individual RI OCSS defendants' bad faith, Seguin is entitled to legal and equitable relief, including damages and punitive damages to deter bad faith actions by Meyersiek and his RI OCSS agents in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT VIII: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALINGS

98. Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

99. Due to Meyersiek', RI OCSS's and the individual RI OCSS defendants' breach of the covenant of good faith and fair dealings, Seguin is entitled to legal and equitable relief, including damages, interest, costs, attorney's fees and/or other relief deemed appropriated.

### COUNT IX: TORTIOUS BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALINGS

100.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

101.    Due to Meyersiek's and the Defendants' collective tortious breach of the covenant of

good faith and fair dealings, Seguin is entitled to legal and equitable relief, including

damages, and punitive damages to deter tortious actions by Meyersiek and his RI OCSS

agents in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT X: BREACH OF FRAUDULENT CONCEALMENT/ COMMON LAW FRAUD

102.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

103.    Due to Meyersiek's and the RI OCSS defendants' breach of fraudulent

concealment/common law fraud, Seguin is entitled to legal and equitable relief, including

damages, and punitive damages to deter fraudulent actions by Meyersiek and his RI OCSS

agents in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT XI: CONCEALED FRAUD

104.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

105.    Due to Defendants' concealed fraud, Seguin is entitled to legal and equitable relief,

including damages, and punitive damages to deter concealed fraud actions by Meyersiek

and his RI OCSS agents in the future, interest, costs, attorney's fees and/or other relief

deemed appropriate.

### COUNT XII: TORT OF DECEIT

106.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

107.    Due to Defendants' deceit, Seguin is entitled to legal and equitable relief, including

damages, and punitive damages to deter deceit by Meyersiek and his RI OCSS agents in the

future, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT XIII: RECKLESS INDIFFERENCE TO THE RIGHTS OF SEGUIN

108.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

109.    Due to Defendants' reckless indifference to the rights of Seguin, Seguin is entitled to

legal and equitable relief, including damages, and punitive damages to deter the reckless

indifference to the rights of Seguin (others) by Meyersiek and his RI OCSS agents in the

future, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT XIV: DELIBERATE INDIFFERENCE TO THE RIGHTS OF SEGUIN

110.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

111.    Due to Defendants' deliberate indifference to the rights of Seguin, Seguin is entitled to

legal and equitable relief, including damages, and punitive damages to deter the deliberate

indifference to the rights of Seguin (others) by Meyersiek and his RI OCSS agents in the

future, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT XV: ABUSE OF PROCESS

112.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

113.    Due to Meyersiek's abuse of process attaching liens and levy on Seguin's property of

very large amounts of $75,638.00 for "interest" that was already waived and therefore not

due or owing, Seguin is entitled to legal and equitable relief, including damages, and

punitive damages to deter abuse of process by Meyersiek and his RI OCSS agents in the

future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT XVI: BREACH OF DUTY

114.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

115.    Due to Defendant RI OCSS and the individual RI OCSS Defendants' breach of duty, who,

as a government agency, absolutely owe Seguin, the noncustodial parent, a duty, Seguin is

entitled to legal and equitable relief, including damages, and punitive damages to deter

breach of duty by RI OCSS agents in the future, interest, costs, attorney's fees and/or other

relief deemed appropriate.

## COUNT XVII: ACCOUNTING FRAUD

116.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

117.    Due to Meyersiek's accounting fraud on his own and by instruction to and condoning his

agents' actions of taking interest off and putting it back on again, posting or publicly

noticing large varying alleged "interest" of $75,638.00, then $73,000.00, then $75,621.23

then changing again within a matter of a month or two, and by and through his agents, RI

OCSS, who, as a government agency, absolutely owe Seguin, the noncustodial parent, a

duty, Seguin is entitled to legal and equitable relief, including damages, and punitive

damages to deter accounting fraud by Meyersiek and his RI OCSS agents who are

professionals (accountants and lawyers), in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT XVIII: FRAUD COVER-UP

118.     Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

119.     Meyersiek and his RI OCSS Defendant agents know that there is no claim for interest having waived interest in consideration of Seguin's lump sum payoff payment of $104,185.98.  Defendants know they are in breach of contract.   Meyersiek, by and through his agents at RI OCSS, know that "put interest back on the system" and the covert liens and levy on Seguin's properties in the State of Texas are legally insufficient and have covered up evidence of Meyersiek's breach of contract documented in Seguin's RI OCSS case file by denying Seguin access to her case file.  Even after Seguin petitioned for her case file pursuant to the RI APRA under R.I. Gen. Laws sec. 38-2-1, et seq. to the Secretary of RI EOHHS, RI OCSS denied Seguin's APRA request and only partially released records, withholding telephonic records, notes, accounting statements and other records evidentiary of Meyersiek's waiving of interest and all documents relating to his agents at RI OCSS clandestinely seizing Seguin's properties in the State of Texas through legally insufficient liens and levy of the substantial amount $75,638.00 in breach of contract for interest that Meyersiek already waived.  After levying Seguin's bank account on April 28, 2022, RI OCSS defendants never credited Seguin's RI OCSS child support account for RI OCSS's seizure of Seguin's bank assets.

120.    Due to Meyersiek's fraud cover-up on his own and by instruction to and condoning his RI OCSS agents' actions, and by and through his agents, RI OCSS, who, as a government agency, absolutely owe Seguin, the noncustodial parent, a duty, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter fraud cover-up by Meyersiek and his RI OCSS agents who are professionals (accountants and lawyers), in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT XIX: RI GOVERNMENT TORT LIABILITY AGAINST RI OCSS DEFENDANTS**

121.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

122.    Defendant RI OCSS and individual defendant RI OCSS agents know that there is no claim for interest having waived interest.  Meyersiek, by and through his agents at RI OCSS, know that "put interest back on the system" and the covert liens and levy on Seguin's properties in the State of Texas are legally insufficient and have covered up evidence of Meyersiek's breach of contract and RI OCSS's breach of contract with Seguin documented in Seguin's RI OCSS case file by denying Seguin access to her case file.  Even after Seguin petitioned for her case file pursuant to the RI APRA under R.I. Gen. Laws sec. 38-2-1, et seq. to the Secretary of RI EOHHS, RI OCSS denied Seguin's APRA request and only partially released records, withholding telephonic records, notes, accounting statements and other records evidentiary of Meyersiek's waiving of interest and all documents relating to his agents at RI OCSS covertly seizing Seguin's properties in the State of Texas through legally insufficient liens and levy in breach of contract for interest that Meyersiek already waived.

123.    When confronted by the EHO at the Appeals Prehearing, John Langlois of RI OCSS

misleadingly commented, "Didn't Karla tell you Meyersiek changed his mind" knowing fully

well that none of Meyersiek's agents at RI OCSS contacted Seguin, as so to start to covertly

seize her properties in the State of Texas within two days of Seguin's $104,185.98 payoff

payment on December 7, 2022.  Meyersiek, by and his agents RI OCSS, immediately "put

interest back on the system" subsequent to Seguin's payment, and the case tracking history

showed no record of any intention to disclose their adverse actions against Seguin

subsequent to Seguin's payoff payment in December 7, 2021.  Meyersiek and his agents at

RI OCSS seized Seguin's properties covertly without disclosure, and foresaw and should

have foreseen the economic harm and mental anguish that Seguin would suffer.  Instead of

enforcing the contract between Seguin and Meyersiek, RI OCSS punished Seguin for

executing in good faith the terms of contract.  RI OCSS the vigorously covered up its own

breach of contract along with Meyersiek's breach of contract, in addition to their

clandestine seizure of Seguin's properties for interest that was already waived per contract.

Seguin suffered economic harm and mental anguish.

124.    Due to the tortious acts committed by RI OCSS, who, as a government agency,

absolutely owes Seguin, the noncustodial parent, a duty of disclosure, a duty to honest

services and dealings, Seguin is entitled to legal and equitable relief, including damages, and

punitive damages to deter tortious acts by RI OCSS agents who are professionals

(accountants and lawyers), in the future, interest, costs, attorney's fees and/or other relief

deemed appropriate.

### COUNT XX: 42 U.S.C. § 1983 CLAIM AGAINST RI OCSS DEFENDANTS FOR RECKLESS INDIFFERENCE TO PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS

125.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

126.    RI OCSS's official and unofficial policies and customs encouraged, caused, allowed, and/or enabled Defendants Tighe, Dibiase, Bonin, Fobert, Caballeros, Flynn, Langlois and Gould to violate Plaintiff's constitutional and state rights without fear of discipline for those violations.  See *Monell v. Department of Social Services*, 436 U.S. 638 (1978).

127.    RI OCSS has not disciplined Defendants Tighe, Dibiase, Bonin, Fobert, Caballeros, Flynn, Langlois and Gould for their violations of Plaintiff's constitutional rights and therefore has implicitly approved, ratified, or adopted Tighe, Dibiase, Bonin, Fobert, Caballeros, Flynn, Langlois and Gould's unconstitutional actions, yet RI OCSS is responsible for Defendants' supervision, training, and discipline through its policy making powers and personnel decisions.

128.    There is an obvious need for RI OCSS to train all its employees on Fourth and Fourteenth Amendment rights.  RI OCSS, therefore, has demonstrated a policy of deliberate indifference to such civil rights violations.  See *City of canton v. Harris*, 489 U.S. 378, 389 (1989).

129.    RI OCSS's reckless actions under color of state law before, during, and after Seguin's loss has caused Plaintiff to suffer and continue to suffer the damages Plaintiff has described.

130.    These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

**COUNT XXI: 42 U.S.C. § 1983 CLAIM OF FOURTH AMENDMENT ILLEGAL SEIZURE OF PLAINTIFF'S PROPERTY**

131.     Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

132.     Defendants under color of law deprived Plaintiff of Plaintiff's property rights which are secured through the Fourteenth Amendment, by seizing Plaintiff's property without a claim for interest, having already waived interest in consideration of Seguin's payment of a very large lump sum payoff of child support.

133.     Defendants further covered up their deprivation and their breach of contract by denying Seguin's right to access her own case records to refute the arrearage calculation of interest that was already waived, a right secured by the Fourteenth Amendment to the United States Constitution.

134.     In depriving the Plaintiff of these rights, Defendants committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless disregard of Plaintiff's rights and property rights.

135.     The deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

**COUNT XXII: STATE TORT OF LIABILITY AGAINST DEFENDANTS UNDER 42 U.S.C § 1983**

136.     Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

137.     Defendants actions underlying their breach of contract to the Plaintiff are illegal under the United States Constitution's Fourth Amendments as applied to the States via the Fourteenth Amendment.

138.   This deprivation under color of state law is actionable under and may be redressed by

42 U.S.C. § 1983.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, respectfully requests of this Honorable Court the following relief:

a.   Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

b.   Trial by jury on all issues so triable;

c.   Pre-judgment and post-judgment interest;

d.   Damages, including pecuniary damages, in excess of $1,000,000.00.

e.   Damages, costs, and attorney fees where applicable;

f.   Punitive damages, costs, and attorney fees where applicable;

g.   Plaintiff costs of suit, including without limitation, its attorney's fees, expert fees, and actual incurred costs;

h.   Award to Plaintiff of reasonable attorney's fees and costs incurred in connection with this action from the Defendant pursuant to 42 U.S.C. § 1983; and

i.   Such other further relief as the Court deems just and proper or that is necessary to make the Plaintiff whole.

## JURY DEMAND

Plaintiff respectfully requests a jury trial of all issues alleged herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed by mail today, on January 17, 2023, the foregoing with the Federal Clerk of the Court for Rhode Island.

Respectfully submitted,

Mary Seguin

Pro Se

/s/

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: January 17, 2023