UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,

*Plaintiff,*

VS.                                                    Civil Action No. 1:23-cv-00034

RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN TIGHE,
MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS and TIMOTHY FLYNN
in their individual and official capacities; GERO MEYERSIEK,

*Defendants*

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Mary Seguin ("Seguin" or "Plaintiff"), citizen of the State of Texas, sues for

damages in excess of $1,000,000.00 from Defendants RHODE ISLAND OFFICE OF CHILD

SUPPORT SERVICES ("RI OCSS" or "Defendant(s)") in its official capacity; KEVIN TIGHE {"Tighe"

or "Defendant(s)"), MONIQUE BONIN ("Bonin" or "Defendant(s)"), FRANK DIBIASE ("Dibiase" or

"Defendant(s)"), WENDY FOBERT ("Fobert" or "Defendant(s)"), KARLA CABALLEROS

("Caballeros" or "Defendant(s)") and TIMOTHY FLYNN ("Flynn" or "Defendant(s)") in their

individual and official capacities; GERO MEYERSIEK Gero Meyersiek ("Meyersiek" or

"Defendant(s)").  Such damages arise out of Defendants':  Breach of Contract; Breach of Implied

Contract; Unjust Enrichment; Misrepresentation; Negligent Misrepresentation; Common Law

Bad Faith; Breach of the Covenant of Good Faith and Fair Dealings; Tortious Breach of Implied

Covenant of Good Faith and Fair Dealings; Breach of Fraudulent Concealment; Concealed Fraud;

Tort of Deceit; Bad Faith; Reckless Indifference to the Rights of Seguin; Abuse of process;

Breach of Duty; Accounting Fraud; Fraud Cover-up; Rhode Island Government Tort Liability Act

pursuant to R.I.G.L. § 9-31-1; 42 U.S. Code § 1983 federal civil rights violation, and states the

following in good support of this Complaint:

## NATURE OF THE ACTION

1. This is a breach of contract, tort liability, Rhode Island Government Tort Liability Act under

   R.I.G.L. § 9-31-1, and 42 U.S. Code § 1983 federal civil rights case under the Fourth

   Amendment of the United States Constitution as applied to the States under the United

   States Constitution's Fourteenth Amendment for the Defendants' individual and collective

   unlawful violations under color of state law of Plaintiff's constitutional right to protection

   against the unlawful seizures of Plaintiff's Texas properties for their "interest" claim that

   was already waived by Meyersiek and fully forgiven by RI OCSS under the State's Debt

   Compromise Policy, per contract terms between the Plaintiff, Defendant RI OCSS and

   defendant Meyersiek.  This is further a case for breach of duty, misrepresentation, false

   accounting, concealment and unlawful seizure of the Plaintiff's properties in Texas by the

   defendants for state tort claims for breach of specific duty to the Plaintiff.  The contract was

   formed between the Plaintiff with the defendants on **December 7, 2021**. RI OCSS and

   Meyersiek entered into a contract with Seguin that forgave the full interest portion of the

   child support debt and waived interest, in consideration of Seguin paying a lump-sum payoff

   amount of $104,185.98.  Under his agreement with Seguin, Meyersiek waived interest.

   Under its agreement with Seguin, RI OCSS forgave the full interest of the child support debt

   under the State's Debt Compromise Policy.

2.  Defendants are in breach of contract, committed unlawful violations of Plaintiff's

    constitutional and state rights under color of state law in bad faith and with malicious

    purpose in reckless and willful disregard of Plaintiff's rights and property rights.


## I.      JURISDICTION AND VENUE

1.  Plaintiff is a citizen of the State of Texas and the amount in controversy exceeds $75,000.00.

    This Court has subject-matter jurisdiction pursuant to Title 28, Section 1332 of the United

    States Code (28 U.S.C. § 1332).

2.  Plaintiff also brings this action pursuant 42 U.S.C. § 1983 for violations of civil rights under

    the Fourth and Fourteenth Amendments to the United States Constitution.

3.  This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331

    (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights); 28 U.S.C. § 1367 provides

    supplemental jurisdiction over the state law tort claims that arose from the same common

    nuclei of facts.

4.  Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b).

    Defendants' primary employment is in this district, and Defendants' independent and

    collective malicious and unlawful violations under color of state law of Plaintiff's

    constitutional rights giving rise to the claims herein accrued within this district.

5.  At all material times, Defendants committed these unlawful violations under color of state

    law in bad faith and with malicious purpose in reckless, and willful disregard of Plaintiffs'

    rights and property rights.

6. These breach of contract, tort liability, state tort liability, and constitutional law violations are "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973) (citing *Southern Pacific Terminal Co. v. ICC*, 219 U. S. 498, 515 (1911), *Moore v. Ogilvie*, 394 U. S. 814, 816 (1969), *Carroll v. Princess Anne*, 393 U. S. 175, 178-179 (1968), *United States v. W. T. Grant Co.*, 345 U. S. 629, 632-633 (1953)).

## II.      PARTIES

7. Plaintiff Mary Seguin ("Seguin" or "Plaintiff") is an adult female citizen of Texas.

8. Defendant Rhode Island Department of Human Services, Office of Child Support Services ("RI OCSS") is a political subdivision of the State of Rhode Island.

9. Defendant Gero Meyersiek is and has been at all material times a resident of Rhode Island.

10. Defendant KEVIN TIGHE is and has been at all material times the Deputy Chief Counsel of Rhode Island Office of Child Support Services ("RI OCSS"). Tighe is a State employee.

11. Defendant MONIQUE BONIN is and has been at all material times the Finance Administrator of the RI OCSS.  Bonin is a State employee.

12. Defendant FRANK DIBIASE is and has been at all material times the Associate Director of RI OCSS.  DiBiase is a State employee.

13. Defendant WENDY FOBERT is and has been at all material times the Accountant of RI OCSS. Fobert is a State employee.

14. Defendant KARLA CABALLEROS is and has been at all times the Child Support Administrator of RI OCSS.  Caballeros is a State employee.

15. Defendant TIMOTHY FLYNN is and has been at all times the Child Support Administrator of RI OCSS.  Flynn is a State employee.

### III.     FACTUAL ALLEGATIONS

16.  All transactions and communications between the Texas Plaintiff and the RI OCSS Defendants were conducted via wire or mail: telephone, email, bank wire transfer or mail. No transactions were conducted in person.

17. On December 7, 2021, the Rhode Island Department of Human Services Office of Child Support ("RI OCSS") and Meyersiek entered into a contract with Seguin in which the State by and through RI OCSS forgave the full interest portion of the child support debt and Meyersiek waived interest, in consideration of Seguin paying a lump-sum payoff amount of $104,185.98.  Under its agreement with Seguin, RI OCSS forgave the full interest of the child support debt under the State's Debt Compromise Policy.  Under his agreement with Seguin, Meyersiek waived interest.

18. The contract was also brokered by the Rhode Island Department of Human Services Office of Child Support Services ("RI OCSS") under Rhode Island's and the RI OCSS's Debt Compromise Policy[1] as it applies to child support debt, with both Gero Meyersiek (the custodial parent) and RI OCSS as parties to the agreement, whereby Meyersiek waived interest and RI OCSS agreed to forgive the full portion of interest debt in consideration of Seguin paying the very large sum of $104,185.98 in one lump-sum to pay off all child

---

[1] Pursuant to its policy, Rhode Island Office of Child Support Services routinely compromises state-owed arrears, as per written communication provided by the federal Administration for Child and Families, U.S. Department of Health and Human Services, 330 C Street, S.W., Washington, D.C. 20201.

support arrears.[2]  The child (Seguin's daughter) for which child support was ordered was already emancipated at the time of contract formation and over twenty-two years of age. This is a three-party contract binding Seguin, RI OCSS and Meyersiek, that was brokered *and* agreed to by RI OCSS under its Debt Compromise Policy.  Under the Debt Compromise Policy, the State of Rhode Island's political subdivision, RI OCSS, is authorized to compromise child support debt, act as the broker of debt compromise agreements between the noncustodial parent and the custodial parent to forgive child support debt, and enter into binding agreements to compromise debt among the three parties of: (1) the noncustodial parent, (2) the State, and (3) the custodial parent.[3]  Under its Debt Compromise Policy, Defendant RI OCSS, in agreement with the contract terms of interest waiver and interest debt forgiveness by the State, emailed a written advisement from Defendant Caballeros on the morning of December 7, 2021, to Seguin in Texas that said, "….accounting says to pay $104,185.98 by bank wire transfer to RI OCSS's child support collection bank account" with bank wire instructions to RI OCSS's bank account.  Defendant Caballeros represented to the Plaintiff that there was no interest because Meyersiek waived interest and interest was forgiven, and the $104,185.98 payoff was calculated by the RI OCSS's accounting department.  Seguin justifiably relied on RI OCSS's email written advisement and payoff offer, accepted on the same day, and Seguin, per agreement, executed on the agreement via payment by bank wire transfer the lump sum payoff amount

---

[2] John Langlois's, Deputy Chief Counsel of RI OCSS, representation at Rhode Island Executive Office of Health and Human Services ("RI EOHHS") Appeal Office Prehearing Conference on October 5, 2022.

[3] Pursuant to its policy, Rhode Island Office of Child Support Services routinely compromises state-owed arrears, as per written communication provided by the Federal Administration for Child and Families, U.S. Department of Health and Human Services, 330 C Street, S.W., Washington, D.C. 20201.

of $104,185.98 in consideration of Meyersiek and RI OCSS's debt compromise policy

authority waiving interest and forgiving the interest portion of the debt.  These terms were

offered, accepted and executed by RI OCSS, who was also the broker agent for both Seguin

and Meyersiek, on December 7, 2021.  RI OCSS acted in the dual capacity of broker agent

for both Meyersiek and Seguin, as well as being a party to the payoff agreement, under its

Debt Compromise Policy.[4]  Rhode Island's Debt Compromise Policy authorized RI OCSS to

agree to forgive arrears with Seguin, and also broker a debt compromise agreement

between the noncustodial ("Seguin") and custodial ("Meyersiek") parents.

19. <u>Subsequent to</u> Seguin paying by bank wire the payoff amount to RI OCSS's bank account,

Gero Meyersiek "changed his mind" regarding interest waiver, in breach of contract, kept

Seguin's lump sum payoff payment made in consideration of Meyersiek's waiver of interest,

and told RI OCSS to "put interest back on the system"[5] without disclosure or notice to

Seguin.   Then, RI OCSS, in breach of its contract with Seguin forgiving the interest under its

Debt Compromise Policy, and in breach of duty to Seguin, actually did what Meyersiek's told

the agency to do: the agency put interest back on the RI OCSS system that Meyersiek

demanded in breach of its interest forgiveness agreement with Seguin, and failed to

disclose or notice Seguin that the agency "put interest back on the system."  In breach of

contract and in breach of duty to Seguin, RI OCSS not just failed to, but subsequently

<u>refused</u> to disclose to Seguin <u>and withheld from Seguin</u> documentation and records of

---

[4] Pursuant to its policy, Rhode Island Office of Child Support Services routinely compromises state-owed arrears, as per written communication provided by the Federal Administration for Child and Families, U.S. Department of Health and Human Services, 330 C Street, S.W., Washington, D.C. 20201.

[5] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe; John Langlois's, Deputy Chief Counsel of RI OCSS, representation at Rhode Island Executive Office of Health and Human Services ("RI EOHHS") Appeal Office Prehearing Conference on October 5, 2022.

Meyersiek's change of mind of interest waiver in breach of contract *subsequent* to Seguin's lumpsum payoff payment, and RI OCSS's own actions in breach of contract of interest forgiveness with Seguin by executing on Meyersiek's breach-of-contract demand placing interest back on the RI OCSS system, in breach of its contract with Seguin.  Similarly to Meyersiek, RI OCSS failed to return Seguin's lump-sum payoff payment wire transfer to RI OCSS's child support collection bank account and kept Seguin's payment without disclosure to Seguin of Meyersiek's and the agency's own "change of mind" breach of contract subsequent to Seguin making the payoff payment of the lump sum $104,185.98.  As quickly as two days subsequent to Seguin wire-transferring her good faith lump sum payoff payment to RI OCSS's child support collection bank account, RI OCSS started to place liens and levy on Seguin's property in Texas without notice or disclosure to Seguin, including seizing the bank account from which Seguin wired the lump sum payoff payment in good faith, for the very large amount of $75,638.00.  This very large sum of $75,638.00 to this day is unexplained and RI OCSS refuses to provide Seguin with an accounting explanation of how RI OCSS calculated this very large amount.  Without giving Seguin any explanation or accounting calculation of how $75,638.00 was calculated, RI OCSS further thwarted, then denied, Seguin's good faith requests and right to her case records for accounting and legal explanation, pursuant to Seguin's several subsequent requests for documentation and calculation explanation.

20. Seguin knew that the payoff agreement she entered into brokered by RI OCSS was a contract with both Gero Meyersiek and RI OCSS.  Seguin is and has been aware of RI OCSS's policy of forgiving state-owed arrears.  At least 36 states and the District of Columbia have

debt compromise options available to noncustodial parents, including Rhode Island.[6]

Compromise means the partial or full forgiveness or reduction of child support debt.

Compromise of child support debt is an official department of human services policy

promulgated through Federal Commissioner Tangular Gray by the Office of the Child

Support Enforcement of the Administration of Children and Families in the U.S. Department

of Health and Human Services.  Rhode Island represented that it officially has a Debt

Compromise Policy and is one of the 36 states nationwide that adopted debt compromise

options available to noncustodial parents.[7]

21. Defendants knew and should have known that the payoff agreement with Seguin was a

good faith contract with both Gero Meyersiek and with RI OCSS, and knew and should have

known RI OCSS's child support payoff agreement with Seguin is authorized and entered into

under the State's official policy of forgiving interest and other state-owed arrears.

Defendant RI OCSS and its employees actively brokered the contract terms and agreed to

the waiver of interest and forgiveness of interest under the authority by the State to

compromise arrears debt under its Debt Compromise Policy.[8]  Under this Debt Compromise

Policy, the RI OCSS acted as the agent to both Seguin and Meyersiek to waive interest debt,

and entered into agreement with Seguin to forgive interest debt, and agree to the waiver of

interest by Meyersiek.  As such, RI OCSS owes a duty to Seguin for its capacity in brokering

---

[6] Per written communication provided by Commissioner Tangular Gray, Office of Child Support Enforcement, Administration for Child and Families, U.S. Department of Health and Human Services, 330 C Street, S.W., Washington, D.C. 20201.

[7] Pursuant to its policy, Rhode Island Office of Child Support Services routinely compromises state-owed arrears, as per written communication provided by the Federal Administration for Child and Families, U.S. Department of Health and Human Services, 330 C Street, S.W., Washington, D.C. 20201.

[8] *Id.*

the interest waiver and interest debt compromise agreement, and is party to the agreement

it brokered that compromised the interest debt by waiver of interest, under the authority of

the State's Debt Compromise Policy that compromises child support debt.  Compromise

means the partial or full forgiveness or reduction of child support debt.[9]  RI OCSS and

Meyersiek entered into a contract with Seguin that forgave the full interest portion of the

child support debt, in consideration of Seguin paying a lump-sum payoff amount of

$104,185.98.  Under its agreement with Seguin, RI OCSS forgave the full interest of the child

support debt under authority under the State's Debt Compromise Policy.

22. Subsequent to RI OCSS obeying Meyersiek's instruction to RI OCSS to "put the interest back

on the system," in breach of Meyersiek's and RI OCSS's waiver of interest in breach of both

parties' agreement with Seguin, RI OCSS started seizing Seguin's Texas bank account from

which she wired the payoff $104,185.98 payment, and Texas assets through notices of liens

and levy (some issued "offline" that Seguin never received notices of in the mail) on

Seguin's property for the very large sum of $75,638.00, without notice to Seguin as they

relate to Seguin's bank account in the State of Texas, and without providing any explanation

what it was for or how the very large amount was computed/calculated, and without

providing any justification, and without providing any accounting explanation for the

calculation of the $75,638.00 lien.

23. Defendants knew and should have known that there was no probable cause for seizure of

Seguin's property for "interest" debt that was already waived and fully forgiven under

contractual agreement with Seguin.  It must be noted RI OCSS did not return or reject

---

[9] "State Child Support Agencies with Debt Compromise Policies," U.S. Department of Health and Human Services Publication, 2021, 2022.  Inquiries: OCSE.DPT@acf.hhs.gov

Seguin's lump sum payment wired to its own support collection bank account.  Nor did RI

OCSS disclose to Seguin the material fact that RI OCSS "put interest back on the system"

subsequent to Seguin's bank transfer payment.  On the contrary, RI OCSS's December 2021

entries in their case tracking record for Seguin's case file showed a preoccupation to ensure

Seguin's December 7, 2021 payment would not be reversible, while simultaneously "put the

interest back on the system" without any regard to disclosure to Seguin on its material

change of breaching its full forgiveness enforcement property seizure for "interest" adopted

by RI OCSS, which lacked any probable cause.[10]

24. Per documentation of Seguin's *Rhode Island Department of Human Services Office of Child

Support Services ("RI OCSS") Case Tracking Case History* documentation, RI OCSS is Gero

Meyersiek's ("Meyersiek") agent and Meyersiek is RI OCSS's principal, labeled as "Client."[11]

RI OCSS acted as Meyersiek's agent and formed an agent relationship.  Meyersiek is the

Custodial Parent and Seguin is the Noncustodial Parent.  RI OCSS also owes Seguin a duty to

administer child support fairly and with accuracy.  RI OCSS also owes Seguin a duty in its

capacity as the dual broker of debt forgiveness under the State's Debt Compromise Policy,

between the noncustodial parent and the custodial parent.  (Seguin's daughter, Julia, was

emancipated on April 21, 2018, and is an adult twenty-two years old).

25. Notwithstanding the relationship between Defendants RI OCSS and Meyersiek, RI OCSS also

owes duty to Seguin, who is the noncustodial-parent citizen of Texas.  Among the many

duties RI OCSS owes and has owed to Seguin include the duty of broker agent to Seguin,

duty of performing on contract agreement with Seguin, duty of disclosure, duty of acting in

---

[10] Per RI OCSS Case Tracking Case History Documentation entries by Kevin Tighe.
[11] Per RI OCSS Case Tracking Case History Documentation stating Gero Meyersiek is "D Client."

good faith and duty to respect Seguin's due process rights, including disclosure of how RI OCSS calculated interest arrears, what and why and how RI OCSS collects "interest arrears" that RI OCSS Defendants knew and should have known Meyersiek waived interest claim per contract agreement RI OCSS brokered and agreed to itself.

26. The December 7, 2021 contract that Meyersiek entered into with Seguin, waiving all interest in consideration of a lump sum payment of $104,185.98 by Seguin to pay off all child support arrears Seguin owed,[12] was brokered by Meyersiek's agents, RI OCSS officials, (who also owe Seguin, the non-custodial parent, a duty as collectors of child support):

> a. Kevin Tighe, Esq.;
>
> b. Frank DiBiase, Esq.;
>
> c. Monique Bonin (Finance Administrator for the State of Rhode Island);
>
> d. Wendy Fobert (RI OCSS Accounting Department);
>
> e. Karla Callaberos AKA Karla Samsoya (Seguin's case agent).

27. These RI OCSS agents also acted in the dual capacity of agent to Seguin in brokering the agreement. The agency, by its Debt Compromise Policy, entered into agreement with Seguin in which the agency forgave the interest, which Meyersiek waived.

28. Seguin accepted paying the lump sum amount of $104,185.98 in consideration of Meyersiek's waiver of interest and RI OCSS's forgiveness of interest that RI OCSS advised Seguin in writing via email on December 7, 2021, and on the same day paid the $104,185.98 in one lump sum in consideration of Meyersiek's waiver of interest and RI OCSS's forgiving interest debt on December 7, 2021, thereby executed the contract.

---

[12] John Langlois, Deputy Chief Counsel of RI OCSS representation at RI EOHHS Appeal Office Prehearing Conference on October 5, 2022.

29. The December 7, 2021 good faith contract was brokered by RI OCSS, (whose actions

advanced the interest of Meyersiek and whose actions are condoned by Meyersiek), in

Providence, Rhode Island, acting as agent to both Meyersiek *and Seguin*, for $104,185.98

which waived Meyersiek's claim for interest[13]and RI OCSS's forgiving interest debt.  RI OCSS

accepted the terms of contract between Meyersiek and Seguin that it brokered, and

entered into agreement with Seguin to honor the terms of the contract it brokered and

accepted with Seguin.  Under its agreement with Seguin, RI OCSS forgave the interest

portion of the arrears debt, pursuant to its Debt Compromise Policy.

30. Having established the contract terms, agent-relationship(s) between Meyersiek and RI

OCSS, RI OCSS's contract with and duty to Seguin, the location and time, Seguin now

proceeds to lay out the facts forthwith, with specificity, of all the acts, events, transactions,

occurrences, and omissions giving rise to the claims in this lawsuit.

31. For about two months, from October 2021 to November 2021, Seguin in Texas, through her

Texas attorney, Bruce Coane, Esq., repeatedly contacted the Rhode Island Department of

Human Services Office of Child Support Services ("RI OCSS") to pay off in full her child

support obligations.  Seguin learned in October 2021 of a hold on her passport renewal

placed by RI OCSS.  From October 2021 to November 2021, Seguin's Texas Attorney

repeatedly contacted RI OCSS to request Seguin's case file in order to ascertain all arrears

owed in order to pay off all arrears.

---

[13] John Langlois, Deputy Chief Counsel of RI OCSS representation at RI EOHHS Appeal Office Prehearing Conference on October 5, 2022, and comment entered on December 6, 2021 by Kevin Tighe, counsel of RI OCSS, on Seguin's RI OCSS Case Tracking Case History Documentation.

32. However, RI OCSS refused to discuss Seguin's case with Seguin's Texas Attorney and stated it would only discuss Seguin's case directly with Seguin alone, without counsel.

33. Unbeknownst to Seguin, while on the one hand RI OCSS refused to discuss Seguin's case with Seguin's Texas Attorney, on the other hand RI OCSS counsel Kevin Tighe ("Tighe"), (who upon information and belief is a Deputy Chief Counsel of RI OCSS) instead contacted Meyersiek's private attorney, Barbara Grady.  Upon information and belief, Tighe and Meyersiek communicated a number of times in detail regarding Seguin's Texas Attorney's contact to RI OCSS and planned to deprive Seguin of counsel by refusing to discuss Seguin's case with Seguin's Texas Attorney.  Upon information and belief, Tighe and Meyersiek and Grady primarily communicated telephonically to minimize written email and paper trail. Seguin forms this belief based on RI OCSS's written and verbal representations to Seguin that it withheld records (that would include notes made of phone conversations and archived emails) from Seguin of its communication with Meyersiek regarding Meyersiek's waiver of interest.

34. On or about December 6, 2021, Tighe initiated contact with Meyersiek's lawyer to broker a deal in which Meyersiek waives interest and RI OCSS forgives the debt portion of the arrears.  Tighe told Meyersiek and his lawyer Barbara Grady that RI OCSS had removed the interest data off the computer case management system in Seguin's case.  This means that Seguin would see $0.00 under "Interest" in her RI OCSS Statement of Account online account when she logs into her account online.  This online account is designed by RI OCSS, advertised on their website, as the sole portal "child support case management tool" for Noncustodial Parents to review RI OCSS's record of Court Ordered child support, RI OCSS's

arrearage calculations, enable non-custodial parents to set up child support payments and review RI OCSS's record of posted child support payments. All online account publication of key information such as "Total arrears due," "Interest," and "Payments Made," is within the sole control of RI OCSS. Essentially, RI OCSS advertises on its own website to non-custodial parents to rely on the figures published by RI OCSS in their RI OCSS online account. This tool is advertised as a form of service to non-custodial parents.

35. On and about December 6, 2021, Tighe explicitly asked Meyersiek if he would agree to waive interest or if he "wants the interest put back on the system," and Meyersiek explicitly waived interest and instructed Tighe "not to put the interest on the system." Meyersiek condoned the "taking off" of interest in the system. Upon information and belief, anticipating Seguin will have to eventually directly contact RI OCSS herself since RI OCSS stonewalled Seguin's Texas lawyer's attempts to obtain Seguin's files to pay off child support, Meyersiek and Tighe planned to have Seguin access her RI OCSS online account, where RI OCSS posted a Total Due Arrears for $93,214.58 and $0.00 interest, so as to conceal from Seguin their manipulation of her arrears account she would see as soon as she was led by RI OCSS to log on. The RI OCSS agreement brokers include Kevin Tighe, Esq.; "KWC;" Wendy Fobert (accounting department), Monique Bonin (Finance Administrator for the State of Rhode Island); Frank DiBiase,Esq. (Chief Legal Counsel); Timothy Flynn, Esq., Adam Dias ( Accounting Department), Karla Caballeros AKA Karla Samasoya (case agent), per Seguin's RI OCSS Case Tracking System record that RI OCSS released to Seguin on December 22, 2022 through the RI APRA (Rhode Island Access to Public Records Act) request she petitioned to the Secretary of EOHHS (Executive Office of Human and Health

Services) Ana Novais, on December 1, 2022.[14] EOHHS "manages" the Rhode Island

Department of Human Services, of which RI OCSS is a sub-department.  (RI OCSS denied

Seguin's numerous record requests for accounting records and records of Meyersiek's

waiver of interest from her own case file over twelve times from October 2021 to the

present, only allowing her access to her RI OCSS online account.  The content of Seguin's RI

OCSS online account has been manipulated by the agency - through its arbitrary taking off

interest and putting interest back on at will - and RI OCSS has control of what arrears

numbers to publish online at all times.  RI OCSS's practice of arbitrarily "taking off" and

"putting back on interest" at will without proper disclosure or explanation of these material

changes to Seguin, effectively and knowingly made false representations to Seguin of

inaccurate arrears numbers online in her online account, which RI OCSS then told Seguin to

rely on.  Although RI OCSS has a duty to disclose material differences in their published

arrears online from what they allege Seguin owes behind the scenes caused by their "taking

interest off the system," RI OCSS withheld from Seguin this very material unlawful practice

of maintaining multiple books of accounts and bookkeeping of several sets of arrears in

Seguin's case.  This practice is illegal under general accepted accounting principles and

practices.  RI OCSS's concealment from Seguin its removal of interest from the system

manually by RI OCSS is further unlawful.  RI OCSS's practice of keeping multiple sets of

books in Seguin's case is prohibited by federal deceptive trade practices, federal fair debt

collection practices and all other applicable consumer protection laws, both federal and

state.  The Office of Child Support Enforcement of the U.S. Department of Health and

---

[14] Per RI OCSS Case Tracking Case History Documentation.

Human Services defines a non-custodial parent as a "consumer" of the Office of Child

Support Services.  RI OCSS represented at least six sets of books of accounts of alleged

arrears from December 2021 to November 2022:

    a.  $93,214.56 Total Due on December 6, 2021, online, as of November 30, 2021.

    b.  $104,185.98 Total Payoff Amount on December 7, 2021.

    c.  $75,638.00 on a Notice of Intent to Lien dated March 3, 2022.  RI OCSS rescinded

       this figure based on alleged unspecified errors on October 14, 2022.

    d.  $73,000.00 per RI OCSS Deputy Chief Counsel John Langlois's representation at

       the agency administrative appeal Pre-hearing held on October 5, 2022.

    e.  $55,000.00 on RI OCSS correspondence with Meyersiek on October 13, 2022.

    f.  $75,623.71 Total Due for "Interest," online, as of November 30, 2022.

36. RI OCSS refused to provide Seguin any accounting explanation for how RI OCSS calculated

the ever-changing very large sums of alleged arrears of $93,214.56 or $104,185.98 or RI

OCSS's claims for interest that was already waived by agreement for $75,638.00 or

$73,000.00 or $55,000.00 or $75,623.71 despite Seguin's over twelve requests to RI OCSS.

Collecting child support by arbitrarily "taking interest off the system" and "putting interest

This conduct is outright illegal, unconstitutional, and willful.  It is illegal, unconstitutional

and willfully in bad faith to collect child support from Plaintiff in Texas to Plaintiff's

detriment and economic harm, in this manner that is prohibited by common law, by due

process, and by interstate commerce regulatory statutes such as the Deceptive Trade

Practices Act and the Fair Debt Collection Practices Act for the private sector.  The Fair Debt

Collection Practices Act mandates that the collector provide an itemization of the current

amount of the debt that reflects interest, fees, payments, and credits since a particular date that the debtor may be able to recognize or verify with records.  At the very minimum, RI OCSS is similarly required to provide Seguin the same itemization of any amount it claims is owed that reflects interest, payments, and credits, which Seguin is entitled to by law and by constitutional due process guarantees.  Instead, not only did RI OCSS breach its duty to Seguin, breached the contract with Seguin, but additionally manipulated the accounting of arrears calculations, illegally kept at least six sets of books that produced at least six different very large amounts in arrears while concealing and withholding from Seguin the itemization of any amount it claims is owed that reflects interest, payments, and credits, denied and violated Seguin's due process rights from November 2021 to the present, breached the contract with Seguin subsequent to Seguin's payment of the agreed upon payoff amount, then seized her properties without probable cause for "interest" claims that were already waived, then withheld from Seguin access to her file that should contain the itemization of any amount RI OCSS claims is owed (RI OCSS's conduct is similar to the conduct of abusive and predatory debt collectors who withheld from consumers proof or itemization of claimed debt owed, which Congress addressed by enacting the Fair Debt Collection Practices Act for the protection of consumers from predatory debt collection):

37. In or about November 2021, RI OCSS gave Seguin's Texas Attorney the contact information for her account's "case agent," an agent named Karla Caballeros ("Caballeros" or "Karla" or "Karla Caballeros"), for Seguin to contact directly in order to obtain requested information on arrears owed.

38. After two months of stonewalling by RI OCSS who refused to discuss Seguin's case with Seguin's Texas Attorney and conditioning Seguin's access to arrears information by discussion with only herself directly and without counsel, Seguin had no choice but to directly contact on her own the RI OCSS case agent Caballeros whose phone contact RI OCSS gave her Texas attorney for Seguin to call to pay off child support in full.

39. On or about December 6, 2021, Seguin telephoned Caballeros and again reiterated in good faith that she wanted to pay off arrears in full.  Caballeros, acting as Meyersiek's agent and per instruction by Tighe, directed Seguin to log on to her RI OCSS online account for the first time, and told her to pay off the Total Arrears Due figure shown online of $93,214.56 as of November 30, 2021.  $0.00 Interest was recorded on Seguin's online account as of November 30, 2021.  The $0.00 Interest displayed by RI OCSS was represented by Caballeros as the waiver of interest by Meyersiek, which the agency represented was accurate, in that the agency forgave the interest portion of the arrears, which interest Meyersiek had waived.  Caballeros also told Seguin that Caballeros also has access and can simultaneously view the $0.00 interest on Seguin's online account as well as the published information contained therein.  Seguin justifiably relied on the representation by Caballeros, whom RI OCSS represented was Seguin's "account case manager" and the published written information displayed on her RI OCSS online account to be true, complete, and accurate with no other material facts withheld, omitted or concealed.   After RI OCSS's and Meyersiek's deprivation of Seguin's representation by counsel in her good faith dealing with RI OCSS to pay off her child support account, RI OCSS had a special duty to Seguin as dual agent to Seguin brokering the agreement with Seguin as dual agent to

Seguin, and entering into agreement with Seguin in good faith for Seguin to pay off child support as she expressly sought to do, unblock her passport renewal and close her child support case.

40. On or about December 6, 2021, Caballeros communicated to Tighe of Seguin's intentions to pay all arrears in full.  Tighe in turn called Meyersiek's attorney "to advise, and to discuss if Meyersiek wants the interest put back on the case."  Meyersiek, through his private lawyer, Barbara Grady, told Tighe, acting as Meyersiek's agent, that he agreed to waive interest to get Seguin to pay a lump sum payment of $104,185.98.[15] Tighe met with other aforesaid RI OCSS actors, Monique Bonin and Frank DiBiase, acting as Meyersiek's agent, to discuss the details relative to RI OCSS's brokering the contract.[16]

41. On the early morning of December 7, 2021, at approximately 8:47 a.m., Caballeros emailed Seguin saying "Accounting says to pay $104,185.98" with bank wire instructions directing Seguin to pay off all arrears in one lump sum to RI OCSS's bank account for child support collections[17]. Upon information and belief, Tighe designated Caballeros be the front person interface to broker the deal with Seguin, while he led the brokering of the deal.  Caballeros told Seguin to pay the $104,185.98 in one lump sum in consideration of waiver of interest and forgiving of interest.  Seguin asked Caballeros what was the extra $10,971.42 on top of the online Total Arrears $93,214.56 (as of November 30, 2021) for ($93,214.56 was displayed on her online account that Caballeros represented only the day before as the total arrears due). Caballeros told Seguin that it was for "medical" that was not included in

---

[15] Per John Langlois, Deputy Chief Counsel of RI OCSS representation at RI EOHHS Appeal Office Prehearing Conference on October 5, 2022; Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.
[16] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.
[16] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.
[17] Email from Caballeros to Seguin, dated December 7, 2021 at 8:47 a.m.

the $93,214.56 Total Arrears shown on Seguin's RI OCSS online account they both reviewed together just the day before.  Caballeros told Seguin there was no interest because Meyersiek waived interest and interest was forgiven.  Although RI OCSS failed to provide Seguin with an itemized accounting of how RI OCSS calculated $104,185.98, Seguin justifiably relied on the written advisement from RI OCSS's Caballeros's email representation that RI OCSS's "Accounting" Department "says," to be an accurate calculation of "medical" added on to the $93,214.56 that was published in Seguin's online account just the day before, and that the $104,185.98 excluded interest, which was waived by Meyersiek and forgiven by RI OCSS.  Seguin in good faith accepted and agreed, and on the same day paid $104,198.98 in one lump sum to pay off child support immediately that day on December 7, 2021.  Seguin accepted to pay $104,185.98 in one lump sum payment in consideration of Meyersiek's waiver of interest and RI OCSS's forgiving interest.  Seguin executed on the contract on the same day, December 7, 2021, paying by bank wire transfer to RI OCSS's support collection bank count at Citizens Bank.  Additionally, Seguin in good faith communicated with Caballeros of RI OCSS confirming her payment by wire transfer.  Seguin in good faith finalized, executed, and communicated to RI OCSS her execution of the contract to pay off arrears in full.

42. In good faith, subsequent to making her bank wire transfer, Seguin asked Caballeros on and about December 7, 2021 when Seguin would see the posting of the lump sum payment of $104,185.98 on her RI OCSS online account.  Caballeros told Seguin that due to the upcoming Christmas and New Year holidays, it may take up to two months for it to post for her to see it.  Seguin justifiably relied on RI OCSS's representation at the time.  Upon

information and belief, this misrepresentation to Seguin was calculated to put Seguin off

something being wrong, to allow RI OCSS, acting as Meyersiek's agent, to subsequently

immediately and clandestinely lien and levy Seguin's property without notice or disclosure

to Seguin with impunity.

43. Subsequent to Seguin's payment of the large lump of $104,185.98 in consideration of

Meyersiek waiving interest, Meyersiek "changed his mind about waiving interest,"[18] in

breach of contract.  Meyersiek never noticed Seguin of his "change of mind."  Instead,

Meyersiek communicated to Tighe to "put the interest back on the system."  Unbeknownst

to Seguin, and according to Seguin's RI OCSS Case Tracking Record, Tighe similarly "put the

interest back on the system" immediately, in breach of RI OCSS's payoff contract with

Seguin that forgave interest debt, failed to disclose or notice Seguin of the agency putting

interest back on the system in breach of its agreement with Seguin forgiving interest debt,

and all the while acting to ensure Seguin's wire transfer payment of $104,198.98 would not

be reversible.  RI OCSS, in its capacity acting as broker agent to Seguin and having an agency

duty to Seguin, failed to notify Seguin of Meyersiek's breach of contract that RI OCSS itself

brokered, accepted, and entered into with Seguin for a lump sum payoff in consideration of

waiver of interest and its forgiveness of interest debt, but instead ensured that Seguin's pay

off lump sum payment of the large sum of $104,185.98 was NOT reversible, showing no

regard for Seguin's rights.  Meyersiek and RI OCSS, by and through Tighe, kept Seguin's

payment, and put interest back on the system without disclosing to Seguin their collective

breach of contract and actions.  Unbeknownst to Seguin, and according to Seguin's RI OCSS

---

[18] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe; Per John Langlois, Deputy Chief
Counsel of RI OCSS representation at RI EOHHS Appeal Office Prehearing Conference on October 5, 2022

Case Tracking Record, Kevin Tighe made entries on December 9, 2021 that the funds of

Seguin's $104,185.98 bank wire payment arrived, and immediately Tighe put into action

plans to lien Seguin's bank account from which the bank wire transfer was made on the

same day Seguin's funds arrived, December 9, 2021[19].  This immediate contract breach

occurred less than forty-eight (48) hours after Seguin's bank wire payment in execution of

the contract.  This goes to show the bait-and-switch intent and states of mind of the

Defendants.

44.  Unbeknownst to Seguin, on December 8, 2021 upon receipt of Seguin's bank wire transfer,

Wendy Fobert ("Fobert") made several accounting adjustments to Seguin's account and

made entries in Seguin's account on December 9, 2021: "correct CP medical arrears as

interest of $6,028.75 was added to principal in error. Released $104185.98 wire transfer

received 12/08/21 to NON FIP Principal $93214.56, CP Medical Principal $8675.00 and

Medicaid Principal $2296.42."[20]  At all times, defendant Fobert, or Caballeros or Tighe, or

anyone else at RI OCSS never noticed nor disclosed to Seguin an explanation of this error

and adjustment made by Fobert, or Caballeros, or Tighe, or anyone at RI OCSS.  The

aforementioned-Defendants have a duty to disclose accounting adjustment explanations

when there appears to be an error for $6,028.75 which is not a small amount.  Even more

troubling, Seguin is unable to ascertain with certainty what these "errors" and accounting

adjustment and allocations are for or to their accuracy because RI OCSS refuses to this day

to release to Seguin her case file's accounting records with itemization of the amounts RI

OCSS claims is owed, that reflects interest, payments, and credits since a particular date

---

[19] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.
[20] Per RI OCSS Case Tracking Case History Documentation entry by Wendy Fobert dated December 9, 2021.

that Seguin may be able to recognize or verify with records, despite Seguin making over twelve (12) account record requests.  Seguin has no way to validate or verify the accuracy or inaccuracy of any of the alleged "errors" or alleged arrears amounts.

45. Unbeknownst to Seguin, on December 10, 2021, Adam Dias at RI OCSS made the entry in Seguin's account that says "Made adjustment to correct accidental adjustment that made CP medical negative. It is supposed to be $6,028.75."[21]  Again, multiple undisclosed and unexplained errors by the accounting department of RI OCSS occurred in succession that were never disclosed to Seguin.  Seguin is entitled by right to review RI OCSS's book-keeping of her account.  At all times, Seguin never received any communication or disclosure or explanation of this error and adjustment from any of the named Defendants.  Seguin is unable to ascertain with certainty what these "errors" and accounting adjustment and allocations are for or to their accuracy because RI OCSS refuses to this day to release to Seguin her case file's accounting records after over twelve (12) account record requests.

46. Unbeknownst to Seguin, Tighe, on December 14, 2021, cut a check for Meyersiek of Seguin's payment.[22]  Tighe's entry in Seguin's RI OCSS Case Tracking record history omits specifying the amount on the check, therefore, Seguin is, at this juncture, unable to determine how much the check was for due to RI OCSS's continuous denial of Seguin's right to access accounting calculation of alleged arrears in her own case file.

47. Unbeknownst to Seguin, on December 14, 2022, Tim Flynn ("Flynn"), another RI OCSS employee acting on behalf of Meyersiek, "mailed admin. Subpoena and request for info" to

---

[21] Per RI OCSS Case Tracking Case History Documentation entry by Adam Dias dated December 10, 2021.
[22] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe on December 14, 2021.

Seguin's bank.[23]  This act was never communicated to Seguin by any of Meyersiek's agents at RI OCSS.  RI OCSS's adverse actions against Seguin in breach of contract and penalizing Seguin after she executed the contract in good faith lack probable cause for issuances of subpoena into her bank account or property for "interest" claims that were already waived, per contract, that involved multiple attorneys with titles "Deputy Chief Counsel" on the side of Defendant RI OCSS and involved private counsel for Meyersiek, Barbara Grady, Esq.  This waiver of interest agreed to by RI OCSS and Meyersiek was well informed, valid, and binding.  Seguin suffered from defendant RI OCSS's seizure of her property for alleged interest without probable cause, after the RI OCSS forgave the interest debt as per agreement.

48. Unbeknownst to Seguin, on January 4, 2021, Tim Flynn ("Flynn"), on behalf of Meyersiek, and both in breach of contract, spoke with "Marie" at Seguin's bank in Texas from which she wired the lump sum payoff payment to RI OCSS regarding a subpoena that Flynn had sent to the bank regarding Seguin's bank account.  This act was never communicated to Seguin by Flynn nor any of Meyersiek's agents at RI OCSS.[24]

49. Unbeknownst to Seguin, on January 12, 2022, Flynn received letter from Seguin's bank stating Seguin has a checking account at the bank.  Flynn immediately "created an offline notice of intent to lien Seguin's account.  Faxed and mailed copies to Seguin's bank.  Will notice Seguin via mail at the ten day mark."[25]  This act was never communicated to Seguin by any of Meyersiek's agents.  Seguin never received the Notice of Lien.  Upon information

---

[23] Per RI OCSS Case Tracking Case History Documentation entry by Tim Flynn on December 14, 2022.
[24] Per RI OCSS Case Tracking Case History Documentation entry by Tim Flynn on January 4, 2022.
[25] Per RI OCSS Case Tracking Case History Documentation entry by Tim Flynn on January 12, 2022.

and belief, Flynn never mailed the requisite notice so as to ensure the continuation of

clandestine seizure of Seguin's property.  This belief is reasonably formed on the basis that

there is no entry by Flynn at the ten day mark on or about January 22, 2022 of actually

noticing "offline" Seguin via mail at the ten day mark of RI OCSS's "offline" notice of intent

to lien made on January 12, 2022, showing among other things, the consistent pattern of

reckless disregard for Seguin's rights. Upon information and belief, this lien was in the

amount of $75,638.00 for alleged interest. Seguin suffered distress after discovering

defendants' seizure of her property without probable cause for $75,638.00 for alleged

interest that RI OCSS had forgiven and Meyersiek had waived, in breach of contract.

50. Unbeknownst to Seguin, on February 21, 2022, Flynn "mailed and faxed OFFLINE RI OCSS's

perfected notice of lien to Seguin's bank regarding Seguin's account.  Copy mailed to

Seguin."[26]  Seguin never received the "offline" Notice of Perfected Lien.  RI OCSS's failure to

send notice to Seguin of RI OCSS's "offline" generated notices of liens is calculated to

deprive Seguin of her due process right to refute and dispute the notice of lien on her

property.  Upon information and belief, Flynn never mailed the requisite notice so as to

ensure the continuation of clandestine seizure of Seguin's property, and taking advantage

of the fact that she recently had undergone surgery.  This is reasonably formed on the basis

that there is no entry by Flynn at the ten day mark on or about January 22, 2022 of actually

noticing Seguin via mail at the ten day mark, showing among other things, the consistent

pattern of reckless disregard for Seguin's rights.  Upon information and belief, this perfected

lien was in the amount of $75,638.00 for alleged interest. Seguin suffered distress after

---

[26] Per RI OCSS Case Tracking Case History Documentation entry by Tim Flynn on February 21, 2022

discovering defendants' seizure of her property without probable cause for $75,638.00 for

alleged interest that RI OCSS had forgiven and Meyersiek had waived, in breach of contract.

51. Unbeknownst to Seguin, Tighe and other agents of Meyersiek at RI OCSS sometime after

Seguin's payment of $104,185.98 programmed the system to place a lien on any and all

Seguin's property that the Title IV-D Agency program participates in.  RI OCSS contracted

with several third-party organizations, corporations and entities for the purpose of

identifying Seguin's and non-custodial parents' properties for the collection of child support

arrears.  However, RI OCSS engaged said third parties for the collection of interest arrears

that were already waived by Meyersiek and forgiven by RI OCSS, in consideration of

Seguin's lump sum payoff payment, in breach of good faith contract with Seguin.  RI OCSS's

contracting of third parties for the purpose of seizing Seguin's properties for interest that

was already waived in breach of contract was never communicated to Seguin for the

purpose of ensuring the Defendants could continue to covertly seize Seguin's property.

Upon information and belief, RI OCSS contracted with third parties to lien Seguin's property

in the amount of $75,638.00 for alleged interest. Seguin suffered distress after discovering

defendants' seizure of her property without probable cause for $75,638.00 for alleged

interest that RI OCSS had forgiven and Meyersiek had waived, in breach of contract.

52. The RI OCSS's Case Tracking System records on March 4, 2022 that on March 3, 2022

"KWS1263 underlined(created) the lien off insurance asset form."[27]  KWS1263, upon information and

belief, is the code name entered by an unnamed person to contract with third parties,

---

[27] Per RI OCSS Case Tracking Case History Documentation entry dated March 4, 2022.

pursuant to Tighe's instruction, to place liens on Seguin's property.  This was never

communicated to Seguin by any of Meyersiek's agents at RI OCSS.

53. Out of the blue, Seguin received in the mail on March 15, 2022, a Notice of Intent to Lien by

RI OCSS on her insurance property dated March 3, 2022, for the very large amount of

$75,638.00 without any explanation, no accounting and no documented justification.  Upon

information and belief, this lien, in the amount of $75,638.00, was for alleged interest.

Seguin suffered distress after discovering defendants' seizure of her property without

probable cause for $75,638.00 for alleged interest that RI OCSS had forgiven and Meyersiek

had waived, in breach of contract

54. On April 1, 2022, Seguin emailed a timely written appeal to RI OCSS of the March 3, 2022

lien.  Upon information and belief, RI OCSS forwarded Seguin's written appeal to the Rhode

Island Executive Office of Human and Health Services ("RI EOHHS") Appeals Office.  RI

EOHHS is designated as the State's Single Agency under Title IX of the Social Security Act

that has been authorized by the State to hear all appeals stemming from actions by several

state agencies, including enforcement actions by the RI OCSS.

55. A Perfected Notice of Lien in the amount of $75,638.00 was created on April 4, 2022, per

the record entry made on April 5, 2022 by "KWS1263" who created the lien[28], in violation of

applicable Federal and state laws, rules and regulations, as Seguin made timely written

appeal.  This was never communicated to Seguin by any of Meyersiek's agents at RI OCSS.

On or about April 8, 2022, Seguin received in the mail this April 4, 2022 perfected lien and

emailed RI OCSS Caballeros in protest, requesting the removal of the Perfected Lien, since

---

[28]Per RI OCSS Case Tracking Case History Documentation entry dated April 4, 2022.

Seguin had timely appealed the March 3, 2022 notice of intent to lien.  Upon information and belief, this perfected lien, in the amount of $75,638.00, was for alleged interest. Seguin suffered distress after discovering defendants' seizure of her property without probable cause for $75,638.00 for alleged interest that RI OCSS had forgiven and Meyersiek had waived, in breach of contract.

56. Instead of removing the Perfected Lien pending the outcome of Seguin's appeal, Seguin received an email from Paul Gould ("Gould"), Chief of Legal Services of RI OCSS, on April 11, 2022 saying he sent Seguin's insurance company to remove the lien.  However, Seguin's insurance did not receive this alleged removal communication from Gould.  Nor is there any record of Gould's removal of the perfected lien in Seguin's Case Tracking Record.[29] (The entries do not show any entry by Gould on or about April 11, 2022.  The next entry would be dated April 28, 2022, recorded by Flynn, saying he mailed notice of levy to Seguin's bank regarding a lien on Seguin's bank account, copy mailed to Seguin.  Again, as this mailing was done "offline," Seguin never received a copy of a notice of levy from Flynn).  Upon information and belief, RI OCSS's failure to remove the perfected lien, in the amount of $75,638.00, was for alleged interest. Seguin suffered distress after discovering defendants' failure to remove the perfected lien pending the outcome of her appeal, constituting continuing seizure of her property without probable cause for $75,638.00 for alleged interest that RI OCSS had forgiven and Meyersiek had waived, in breach of contract.

57. Upon information and belief, Gould misrepresented to Seguin and never removed the perfected lien, as John Langlois ("Langlois"), counsel of record for RI OCSS for the duration

---

[29] Per RI OCSS Case Tracking History Documentation for the month of April 2022.

of the appeal, and who is the Deputy Executive Legal Counsel of RI OCSS, would later say at the October 5, 2022 Prehearing Conference to the RI EOHHS Appeals Executive Hearing Officer, Deb DeStefano ("EHO"), that the perfected lien was still in place and that the "system" had generated it because Seguin's written appeal was sent on April 1, 2022, which did not give RI OCSS time to make adjustments in the system to stop the perfected lien from going out.  Langlois even objected to the removal of the April 4th Perfected Notice of Lien on October 5, 2022, showing that the Notice of Perfected Lien was never removed, as misrepresented by Gould.  Indeed, on October 14, 2022 RI OCSS issued a Recission of the Notice of Perfected Lien, showing Gould did not remove the April 4th Perfected Notice of Lien.  Seguin suffered distress after discovering defendants' failure to remove the perfected lien pending the outcome of her appeal, constituting continuing seizure of her property without probable cause for $75,638.00 for alleged interest that RI OCSS had forgiven and Meyersiek had waived, in breach of contract.

58. Further, on October 14, 2022, Langlois issued a Notice of Recission of Notice of Lien AND Notice of Perfected Lien, implying that Gould never removed the perfected lien, implying he lied to Seguin of its removal on April 11, 2022.  Obviously, there is no need to issue a recission of the perfected lien on October 14, 2022 if the Perfected Lien was already removed in April 2022 as Gould claimed.  Seguin suffered distress after discovering defendants' failure to remove the perfected lien pending the outcome of her appeal, constituting continuing seizure of her property without probable cause for $75,638.00 for alleged interest that RI OCSS had forgiven and Meyersiek had waived, in breach of contract.

59. From April 1, 2022 to October 5, 2022, the counsels of record for RI OCSS during Seguin's RI EOHHS administrative appeal of the March 3, 2022 lien for $75,638.00 were John Langlois and Paul Gould, to whom Seguin made over ten requests for her case file records pursuant to her right to her case file, as outlined in RI regulation 210-RICR-10-05-2 *et seq*. and per federal regulations for the single state agency fair hearing (RI EOHHS Appeal Fair Hearing) pursuant to 42 CFR sec 431.242(a)(1) and 42 CFR sec 431.242(a)(2) that set the procedural requirement for a single state agency EOHHS's Appeal Fair Hearing, stipulating that the appellant, Seguin, has  the right to his/her case file and must have access to her case file; without access to her case file, Seguin's exercise of the procedural right to question and refute the agency's evidence set forth in 431.242€ is then deprived.  This is consistent with discovery.  431.202 requires that the State Plan must provide sections 431.205 through 431.246 of this subpart are met.  In addition to procedural safeguards, the aforesaid sections set forth the authority to provide corrective actions against errant agency conduct.

60. However, Meyersiek's agents, the RI OCSS actors, and RI OCSS on its own, denied Seguin access to her case file over and over again for over ten times.  The RI EOHHS continued scheduled hearings for three times, the maximum number allowed by regulation for good cause shown, namely due to the fact that RI OCSS had outright denied or ignored Seguin's record requests and denied Seguin access to her records, throughout the appeal process.

61. Seguin submitted to the RI EOHHS Appeals Office evidence of the good faith contract Seguin entered into with Meyersiek that was brokered, accepted, and agreed to in contract by RI OCSS in December 2021, whereby Seguin paid off her child support in full in consideration of Meyersiek's waiving of interest and RI OCSS forgiving interest, including submissions of

the screenshots taken of her online account on December 6, 2021 when she was told by RI

OCSS to log on to her RI OCSS online account by Caballeros representing that it showed

$93,214.56 as total arrears due and $0.00 of Interest representing waiver of interest and

forgiveness of interest debt, as of November 30, 2021; Seguin additionally submitted the

email dated December 7, 2021 where RI OCSS told her "accounting says" to wire transfer

$104,185.98 in one lump sum to pay off child support in full; Seguin further submitted bank

transfer records evidencing her wire transfer of the agreed upon amount on December 7,

2022, showing Seguin's execution of the contract.  RI OCSS produced no documentation

throughout the appeals process of any kind, be it documentation in support of their notices

of liens on Seguin's property issued without probable cause, or documentation supporting

RI OCSS's claim for interest when interest was waived and forgiven.

62. The RI EOHHS Appeals Office and EHO scheduled a Prehearing Conference on October 5,

2022 for the purpose of addressing RI OCSS obstruction of access to Seguin's case file.

63. At the October 5, 2022 Prehearing, the EHO stated that based on Seguin's evidentiary

submissions, the burden of proof lies with RI OCSS to show arrears of $75,638.00 on the lien

is owing.  Only then did Langlois say the following:

> "EHO: The agency will have to submit proof of the allegation for
> arrears to support their position.
> Langlois: The reason why I asked earlier whether Mary spoke to
> Karla after she made the payment was because there was a change
> of circumstances right after that.  I don't know if anyone in my
> agency had ever explained that to Mary.
> Seguin: Wait a minute, wait a minute,
> EHO: Wait Mary, I know what you asked for, let me get to what
> John just said, so John, you said there was a change in
> circumstances subsequent to her making a payment but before the
> notice of lien went out?

Langlois: Yeah.

EHO: OK, so

Langlois: Can I just back up and explain what happened, 99% of this is a misunderstanding

EHO: OK?

Seguin: Including what was on the screenshot, was that a misunderstanding??

Langlois: Can I speak without being shouted over?

Seguin: I am flabbergasted, really.

Langlois: What happened in this case is when Mary's representative, her attorney, called us in late November 2021, and said she wants her passport released and what does she have to do to release her passport, they put her in touch with Karla who gave her the $104,185.98  number.  Where that number came from, was one of our attorneys contacted the custodial parent, Gero Meyersiek, so we contacted his attorney, it wasn't me, it was someone in my office, and said if she's willing to make a $104K to pay off the principle, would you agree to waive the $73K in interest? He said yes.  So Karla notified Mary that if she paid the $104K, it would be paid in full because he was wiling to waive the interest and accept just the principal.  What happened was the day after Karla spoke to Mary to wire in the $104K the attorney for Mr. Meyersiek contacted us again and said he changed his mind, please put the interest back on the system, so we did.  So the number that was given to her on the day it was given to her was correct, the $104K, because he was waiving the interest, but then changed his mind, so we put the interest back on the system, because he was waiving the interest, and that interest was put back on the system and that's why the system is now saying she owes $73K.  That's why in March when the system saw that she had some sort of personal injury insurance in the system, our system was showing she owed $73K so we issued the lien.  But that was what happened, he changed his mind the next day and that's what messed up the numbers. So that's how all this happened,it was a pure misunderstanding, I don't know whether anyone has ever explained that to Mary how that happened.

EHO: OK, Mary, did anyone ever explain that to you before?

Seguin: No. No one ever explained any of that.  This is why I am asking for my case file, I think this is more basis to ask for my entire case file from 2020.  It's news to me for example and its new information to me that your office's lawyer would not talk to me directly but would be picking up the phone and calling the attorney for the custodial parent.  And then not saying you were doing this deal.  I never offered $104K.  You had determined this number, and

that's why I am looking for documentation as to whether this is
something you guys do in every case.
EHO: OK, John, are you intending to submit then, the
documentation showing the full balance, which would include the
principle and the interest before she paid the $104k, and then what
happened after, you're prepared to submit documentation to show
everything that you said just happened.
Langlois: Yes.  I can show the account balance before he agreed to
waive the interest.  And I can show you the account balance after
she made the payment. And then when we put the interest back on
the system.
EHO: And you're going to testify as to why it all occurred, I mean
basically what you just told us.
Langlois: Yes.
Seguin: But the screenshot on December 6th showed $93K."

64. John Langlois described the meeting of minds by RI OCSS, Meyersiek and Seguin.  Langlois

stated, "..when Mary's representative, her attorney, called us in late November 2021, and

said she wants her passport released and what does she have to do to release her passport,

they put her in touch with Karla who gave her the $104,185.98  number.  Where that

number came from, was one of our attorneys contacted the custodial parent, Gero

Meyersiek, so we contacted his attorney, it wasn't me, it was someone in my office, and

said if she's willing to make a $104K to pay off the principal, would you agree to waive the

$73K in interest? He said yes.  So Karla notified Mary that if she paid the $104K, it would be

paid in full because he was wiling to waive the interest and accept just the principal."  John

Langlois also described an offer made by Karla Caballeros, the consideration ($104,185.98

for waiver of interest), and acceptance and execution on contract by Seguin that occurred

on December 7, 2021 when Seguin wired the bank payment of $104,185.98.  John Langlois

also described Meyersiek's and RI OCSS's breach of contract subsequent to Seguin making

the payment that occurred the day after the offer by Karla Caballeros and acceptance by

Mary Seguin: "What happened was the day after Karla spoke to Mary to wire in the $104K

the attorney for Mr. Meyersiek contacted us again and said he changed his mind, please put

the interest back on the system, so we did."

65. In addition to the waiver of interest, Caballeros also represented RI OCSS forgave interest

debt, which Seguin accepted, then executed by making payment of the $104,185.98 on the

same day of the offer, December 7, 2021.

66. Seguin never offered $104,185.98.  RI OCSS, in brokering the agreement, had a duty to

represent the true facts, but misrepresented the facts to Seguin.  Seguin never stated to RI

OCSS, the broker agent, to offer "$104k."  The "$104k" was an amount that RI OCSS

represented to Seguin on December 7, 2021 that its own accounting department had

calculated, adding "medical" to the $93,214.58 that was published on Seguin's RI OCSS

online account just the day before on December 6, 2021.   Defendant Karla Caballeros

represented to Seguin on December 6, 2021 that $93,214.58 was calculated by RI OCSS to

be the accurate total arrears as of November 30, 2021.  Karla Caballeros represented to

Seguin the $0.00 interest published on the RI OCSS account represented waiver of interest

by Meyersiek, and forgiveness of interest debt.  RI OCSS, as brokering agent, represented to

Seguin that $104,185.98 represented adding "medical" to $93,214.58.  Caballeros

represented to Seguin to pay the $104,185.98 in one lump sum in consideration of waiver of

interest and forgiving interest debt.  Seguin told RI OCSS she sought to pay off all arrears.

67.  Seguin never offered $104,185.98; that was an amount RI OCSS represented to Seguin that

was calculated by its accounting department that added "medical" to $93,214.98.  RI OCSS

breached its duty to Seguin as agent brokering the agreement by representing to Seguin

that $104,185.98 is calculated by adding "medical", and then concealing the accounting

calculation from Seguin *how* $104,185.98 calculation had incorporated "medical."  John

Langlois's statement does not describe "medical" added to $93,214.58.  As the broker

agent, RI OCSS is obligated to give Seguin a true representation of the facts.  Seguin suffered

distress after learning RI OCSS misrepresented the facts to Seguin.

68. On or about October 11 to October 13 2022, after the October 5, 2022 Prehearing

conference, Langlois emailed Meyersiek's private lawyer, Barbara Grady, and again asked if

Meyersiek "would waive interest to resolve the case."[30]  Grady emailed that "Meyersiek is

willing to accept $55,00 which is approximately 50% of what is owed."  Langlois had

represented at the October 5, 2022 Prehearing that interest was $73,000 in December

2021, therefore, consistent with a pattern of made up numbers whereby neither Meyersiek

nor his RI OCSS agents would show Seguin the accounting calculations of alleged interest

arrears, clearly Defendants manufacture and fabricate large varying and unjustified

amounts of total interest at all times: obviously $55,000 is not half of $73,000.  To this

email, Langlois replied that "I think we both know that there is zero possibility that Mary

Seguin will agree to pay ANY interest."  None of this correspondence was communicated to

Seguin.  Consistent with all RI OCSS's conduct prior to the October 5, 2022 Prehearing,

Langlois also never explained or disclosed his own correspondence with Meyersiek about

waiving interest, establishing a consistent pattern of behavior of concealment and

misrepresentation, and with all collective actions taken together, deceit to Seguin.

---

[30] Langlois emails dated October 9 to October 13, 2022.

Moreover, Langlois never provided Seguin with the accounting he promised to at the Prehearing either.  Upon information and belief, similarly to Tighe, Langlois met with the Defendants and discussed the plan with Meyersiek, through telephonic correspondence offline to avoid creating a paper trail, to type up a Notice of Recission on October 14, 2022 that claimed there are unspecified errors in the Notices of Liens, but arrears are still owing and it will continue to enforce arrears,[31] calculated to deprive the EOHHS Appeals Office of jurisdiction so that he would not have to testify to Meyersiek's waiving interest, the breach of contract, bad faith and subsequent conduct and actions of Meyersiek's agents at RI OCSS in the RI EOHHS Appeals Hearing.  Langlois filed a motion to dismiss Seguin's RI EOHHS administrative appeal, pleading that the number $75,638.00 on the lien simply "no longer exists," just like that, without explanation and with impunity.  RI OCSS's actions show they disregard any duty owed to Seguin to explain or justify their very large alleged arrears numbers in the substantial levels of $73k or $75K  that change or subsequently refuted by them, at will.  It should be noted that the number $75,638.00 on the lien does not match the $73,000 interest that Langlois repeatedly claimed was on the system before and after Seguin made the $104,185.98 in December 2021, showing that RI OCSS's refusal to show Seguin's case records is motivated by, among others, cover up of manufactured, manipulated and false numbers for interest claims which Meyersiek had already waived and RI OCSS already forgave, in consideration of Seguin's lump sum payment of $104,185.98 as per contract.

---

[31] October 14, 2022 Notice of Recission of Lien – See attached Exhibit.

69. Tighe and all relevant actors of RI OCSS acting on behalf of Meyersiek, never communicated to Seguin about Meyersiek "changed his mind" after Seguin accepted and paid the $104,198.98 in lump sum per the agreement brokered by Meyersiek's agent, RI OCSS, from December 7, 2021 to October 5, 2022.  RI OCSS also acted as dual agent to Seguin in the broker of the contract.  RI OCSS also entered into agreement with Seguin to forgive the interest that Meyersiek waived.  RI OCSS Case Tracking Records and RI OCSS conduct show Tighe and RI OCSS actors and Meyersiek never intended to disclose to Seguin Meyersiek's or the agency's breach of the contract: Tighe's record entries never show he saw a need to inform Seguin of anything his dealings with Meyersiek and his private lawyer Barbara Grady in breach of his duty to Seguin as her agent brokering the deal; instead, unbeknownst to Seguin, his entries and subsequent actions show he only cared about and acted to ensure getting Seguin's $104,185.98 payment in hand, set in motion actions to lien Seguin's bank account as early as December 9, 2021 as soon as the $104,185.98 was in hand by asking Tim Flynn to subpoena her bank account for the purpose of placing a lien on it[32]; the same record shows, unbeknownst to Seguin, Tim Flynn issuing "offline" a notice of lien on January 12, 2022 against Seguin's bank account from which she made the bank wire transfer payment; Tim Flynn's entry comment says he mailed the notice himself, but Seguin never received the notice of lien in the mail;  Tighe, an attorney who, upon information and belief based on website information, is a Deputy Chief Counsel of RI OCSS and acting as Meyersiek's agent, but also has a duty to Seguin as broker agent of the deal and party to agreement with Seguin forgiving interest, consciously and covertly put in place actions to

---

[32] Per RI OCSS Case Tracking Case History Documentation entry by Kevin Tighe.

lien Seguin's bank account and property, to conceal and cover up from Seguin the

immediate breach of the contract brokered by RI OCSS (that he led, as the attorney versed

in contract agreements and the law) acting as Meyersiek's agent, and consciously hid from

Seguin of their breach in order to allow them to pocket the $104,185.98 lump sum payment

and go about placing liens on Seguin's property without Seguin's knowledge.  Meyersiek

took Seguin's $104,195.98 payment and kept it, all the while his agents at RI OCSS went

about attaching liens on Seguin's bank account from which she made the wire transfer

payment the day Seguin's payment was in hand. Meyersiek and RI OCSS never

communicated or noticed in any shape or form to Seguin regarding their active

enforcement of placing liens on any and all property of Seguin's they could find for

"interest" that Meyersiek had waived.

70. To date, there is no documentation available to Seguin as to what amount in interest was

"put back on" the system in Seguin's case file by Tighe and Meyersiek, but the RI OCSS's

system generated a placement of lien on Seguin's person injury insurance claim for the

amount of $75,638.00 on March 3, 2022.

71. On November 29, 2022 the RI EOHHS Appeals Office issued judgment dismissing Seguin's

appeal citing the Recission of the liens caused RI EOHHS to lose jurisdiction over the issue

when the adverse lien action by RI OCSS was withdrawn.

72. On December 1, 2022, Seguin filed a petition to the Secretary of RI EOHHS, Ana Novais,

pursuant to the RI Access to Public Records Act, for her case file records.

73. On December 3, 2022, Seguin logged on to her RI OCSS online account and discovered that

RI OCSS posted a Statement of Account as of November 30, 2022, that says $75,231.00 for

interest, recorded $0.00 payment in December 2021, and no where in her account records her $104,185.98 payment made on December 7, 2021.  Shocked at the prima facie accounting fraud, Seguin filed on December 5, 2022 a Rule 59 Motion for Hearing to the RI EOHHS Appeals Office, attaching the screenshot of the online account taken on December 3, 2022, based on newly discovered evidence.  Langlois filed objections claiming December 2021 evidence is not newly discovered evidence and that it had been available to Seguin. This self-incriminates himself that the prima facie fraudulent recording of $0.00 payment for Seguin's $104,185.98 payment in December 2021 was available to HIM for the duration of Seguin's Appeal.

74. Seguin filed on December 9, 2022 a Rule 60 Motion for Default Judgment based on the fabrication and manufacturing of accounting records in Seguin's file, and on December 14, 2022 filed a Rule 26 and Rule 37 Motion for sanctions.  Langlois filed objections to all Seguin's motions.

75. On January 10, 2023, the RI EOHHS issued judgment indicating that RI EOHHS lacked jurisdiction over Seguin's appeal subsequent to RI OCSS's recission of the liens, categorized as the "adverse actions."  The state administrative appeal thus concluded.

76. On December 13, 2022, Lisa Pinneacult, another lawyer at RI OCSS sent Seguin an email saying that Seguin's RI APRA request for records was denied.  However, her case records would be release before December 31, 2022.

77. On December 22, 2022, Lisa Pinneacult released a partial record of Seguin's file that included the RI OCSS case history tracking record in Seguin's file that is referenced throughout this Complaint.   However, Pinneacult emailed Seguin that RI OCSS withheld all

records related to telephonic communications, including notes made of phone conversations that Tighe had with Meyersiek and his private attorney Barbara Grady in December 2021 regarding Meyersiek's waiver of interest, taking interest off the system and putting interest back on the system.  Also withheld from the record release are the critical accounting records showing how interest calculations were made by RI OCSS, including records showing the "interest before Seguin made her payment," "interest when Seguin made her payoff payment," and "interest subsequent to Seguin's payoff payment" that Langlois agreed to provide Seguin and the Hearing Officer in the telephonic Prehearing Conference on October 5, 2022.  Instead, RI OCSS purposely released a pile of pleadings that were submitted by both Seguin and RI OCSS to the RI EOHHS Appeals Office during the agency administrative appeal hearing from April 2022 to December 2022, rendering the record release purposely non-responsive to Seguin's record request, since RI OCSS knew and should have known that Seguin did not ask for these appeal pleadings that Seguin already has copies of, but that material and central to affording Seguin her right to refute RI OCSS's property seizure for "interest" that was already waived, are the records Seguin has a right to access to in her case file those records relating to RI OCSS's brokering of the contract with Seguin whereby interest was waived in consideration of Seguin's lump sum payoff payment for the very large sum of $104,185.98.

78. RI OCSS officials acted as Meyersiek's agent: Tighe, Caballeros, Fobert, Adams, Flynn, Dibiase, Bonin, Langlois, Gould and Pinsonneault.

79. Barbara Grady at all times acted as Meyersiek's agent.

80. RI OCSS acted as Seguin's agent in brokering the contract and has a duty to represent the true facts to Seguin.

81. RI OCSS forgave interest by agreement in consideration of Seguin's lump sum payment of $104,185.98 that the agency offered to Seguin on December 7, 2021, which Seguin accepted, and executed on the agreement by paying the agreed upon lump sum of $104,185.98.

82. Meyersiek's agents, RI OCSS officials, Tighe, Flynn, Langlois, Gould and Pinsonneault, are attorneys obligated by higher standards of duty of care, and as such committed professional negligence.

83. RI OCSS officials are government officials that owe Seguin, the noncustodial parent, specialty duty.  RI OCSS owes Seguin, the noncustodial parent, special duty.

84. After depriving Seguin of her Texas Attorney, as the RI OCSS brokers of Seguin's contract with Meyersiek, RI OCSS officials assumed dual agent duty to Seguin, as well as special duty as government officials.

85. RI OCSS officials owe Seguin a fiduciary duty and breached it.

86. RI OCSS contracted with Seguin directly for the $104,185.98 payoff amount with contract term forgiving interest, which was waived by Meyersiek.

87. RI OCSS breached the contract with Seguin. RI OCSS levied Seguin's property without probable cause, without proper authority under common law and under the laws of the United States and the State of Rhode Island.

88. To conceal the six (6) different books of accounts RI OCSS of alleged interest debt which RI OCSS forgave by contract, RI OCSS refused and denied Seguin's right to review itemized

accounting with credit, payments and interest of particular dates and to validate and verify RI OCSS's self-admitted but unspecified calculation errors.

## IV.   COUNTS

### COUNT I: BREACH OF CONTRACT

89. Seguin, hereby re-alleges and incorporates by reference all of the preceding paragraphs in this complaint as though fully stated herein.

90. Meyersiek breached the contract with Seguin and is liable for damages.

91. RI OCSS breached the contract with Seguin and is liable for damages.

92. Seguin suffered economic harm, distress and mental anguish due to the defendants' breach.

93. Defendants Tighe, Dibiase, Bonin, Fobert, Caballeros and Flynn individually breached the contract with Seguin and are liable for damages.

### COUNT II: BREACH OF IMPLIED CONTRACT

94. Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

95. Meyersiek is in breach of implied contract with Seguin and liable for damages.

96. RI OCSS is in breach of the contract with Seguin and is liable for damages.

97. Seguin suffered economic harm, distress and mental anguish due to the defendants' breach.

98. Defendants Tighe, Dibiase, Bonin, Fobert, Caballeros and Flynn individually are in breach of the implied contract with Seguin and are liable for damages

### COUNT III: UNJUST ENRICHMENT

99. Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

100.   Meyersiek has been unjustly enriched by pocketing Seguin's large lump sum payment of $104,185.98 paying off child support in full, then "change his mind" without any consideration to Seguin, tells his agents at RI OCSS to clandestinely put interest back on the system against Seguin, both without any disclosure to Seguin, and in just two days after Seguin's December 7th payment in 2021, schemed to lien Seguin's properties without alerting Seguin so as to allow them to seize Seguin's property underhandedly under color of law and without due process afforded to Seguin.

101.   Meyersiek has been unjustly enriched by keeping Seguin's very large lump sum payoff payment of $104,185.98 in consideration of Meyersiek's waiver of interest, all the while levying Seguin's properties that they could get their hands on for unsubstantiated and unjustified $75,638.00 for interest after he already waived interest, without the proper authority under common law and under the laws of the State of Rhode Island.

102.   Meyersiek's RI OCSS agent lawyer Tim Flynn never noticed Seguin of liens on her bank account and clandestinely levied the entire content of Seguin's bank account for Meyersiek's alleged interest claims when they both know Meyersiek already waived claims for interest.  Meyersiek levied Seguin's property without proper authority under common law and under the laws of the State of Rhode Island.

103.   Seguin suffered economic harm, distress, and mental anguish due to the defendant's unjust enrichment.

104.    Seguin is entitled, in this action in equity, for the restitution, return or refund of all the

monies that Meyersiek has received through unjust enrichment.

**COUNT IV: MISREPRESENTATION**

105.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

106.    Seguin has sustained economic injury by paying the large lump sum payoff of

$104,185.98 as per agreement that Meyersiek and RI OCSS immediately breached

agreement thereof, and suffered injury by their breach of duty to disclose to Seguin thereof,

and suffered economic injury by defendants' subsequent clandestine levy condoned by

Meyersiek on the entirety of her bank account for the legally insufficient liens for interest

that were already waived by Meyersiek and forgiven by RI OCSS Seguin has sustained

emotional distress and defendants' conduct had scandalously broken trust in government.

107.    Seguin suffered economic harm, distress and mental anguish due to the

misrepresentation of the defendants.

108.    Due to Meyersiek's, RI OCSS's, and defendants' individual misrepresentations and

omissions, Seguin is entitled to legal and equitable relief, including damages and punitive

damages, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT V: NEGLIGENT MISREPRESENTATION**

109.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

110.    Seguin suffered economic harm, distress and mental anguish due to the negligent

misrepresentation of the defendants.

111.   Due to Meyersiek's, RI OCSS's, and defendants' inidvidual negligent misrepresentations and omissions, Seguin is entitled to legal and equitable relief, including damages and punitive damages, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT IV: INTENTIONAL/FRAUDULENT MISREPRESENTATION**

112.   Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

113.   Seguin suffered economic harm, distress and mental anguish due to the intentional/fraudulent misrepresentation of the defendants.

114.   Due to Meyersiek's, RI OCSS's and defendants' individual intentional/fraudulent misrepresentations and omissions, Seguin is entitled to legal and equitable relief, including damages and punitive damages, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT VII: COMMON LAW BAD FAITH**

115.   Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

116.   Seguin suffered economic harm, distress and mental anguish due to the common law bad faith of the defendants.

117.   Due to Meyersiek's, RI OCSS's, and the individual RI OCSS defendants' bad faith, Seguin is entitled to legal and equitable relief, including damages and punitive damages to deter bad faith actions by Meyersiek and his RI OCSS agents in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT VIII: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALINGS**

118.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

119.    Seguin suffered economic harm, distress and mental anguish due to the breach by the defendants

120.    Due to Meyersiek', RI OCSS's and the individual RI OCSS defendants' breach of the covenant of good faith and fair dealings, Seguin is entitled to legal and equitable relief, including damages, interest, costs, attorney's fees and/or other relief deemed appropriated.

**COUNT IX: TORTIOUS BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALINGS**

121.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

122.    Seguin suffered economic harm, distress and mental anguish due to the tortious breach of the defendants.

123.    Due to Meyersiek's and the Defendants' collective tortious breach of the covenant of good faith and fair dealings, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter tortious actions by Meyersiek and RI OCSS and the defendants individually in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT X: BREACH OF FRAUDULENT CONCEALMENT/
COMMON LAW FRAUD**

124.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

125.    Seguin suffered economic harm, distress and mental anguish due to the breach of fraudulent concealment/common law fraud of the defendants

126.     Due to Meyersiek's and the RI OCSS defendants' breach of fraudulent

concealment/common law fraud, Seguin is entitled to legal and equitable relief, including

damages, and punitive damages to deter fraudulent actions by Meyersiek and RI OCSS in

the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT XI: CONCEALED FRAUD

127.     Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

128.     Seguin suffered economic harm, distress and mental anguish due to the concealed fraud

of the defendants.

129.     Due to Defendants' concealed fraud, Seguin is entitled to legal and equitable relief,

including damages, and punitive damages to deter concealed fraud actions by Meyersiek

and RI OCSS in the future, interest, costs, attorney's fees and/or other relief deemed

appropriate.

## COUNT XII: TORT OF DECEIT

130.     Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

131.     Seguin suffered economic harm, distress and mental anguish due to the deceit of the

defendants

132.     Due to Defendants' deceit, Seguin is entitled to legal and equitable relief, including

damages, and punitive damages to deter deceit by Meyersiek and RI OCSS in the future,

interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT XIII: RECKLESS INDIFFERENCE TO THE RIGHTS OF SEGUIN

133.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

134.    Seguin suffered economic harm, distress and mental anguish due to the reckless indifference of the defendants.

135.    Due to Defendants' reckless indifference to the rights of Seguin, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter the reckless indifference to the rights of Seguin (others) by Meyersiek and RI OCSS in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT XIV: DELIBERATE INDIFFERENCE TO THE RIGHTS OF SEGUIN**

136.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

137.    Seguin suffered economic harm, distress and mental anguish due to the deliberate indifference to the rights of Seguin by the defendants

138.    Due to Defendants' deliberate indifference to the rights of Seguin, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter the deliberate indifference to the rights of Seguin (others) by Meyersiek and RI OCSS in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT XV: ABUSE OF PROCESS**

139.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

140.    Seguin suffered economic harm, distress and mental anguish due to the abuse of process of the defendants.

141.    Due to Defendants' abuse of process attaching liens and levy on Seguin's property of

very large amounts of $75,638.00 for "interest" that was already waived and forgiven,

therefore not due or owing, Seguin is entitled to legal and equitable relief, including

damages, and punitive damages to deter abuse of process by Meyersiek and RI OCSS in the

future, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT XVI: BREACH OF DUTY**

142.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

143.    Seguin suffered economic harm, distress and mental anguish due to the breach of duty

by the defendants.

144.    Due to Defendant RI OCSS and the individual RI OCSS Defendants' breach of duty, who,

as a government agency and officials of the agency, owe Seguin, the noncustodial parent, a

duty, Seguin is entitled to legal and equitable relief, including damages, and punitive

damages to deter breach of duty by RI OCSS agents in the future, interest, costs, attorney's

fees and/or other relief deemed appropriate.

**COUNT XVII: ACCOUNTING FRAUD**

145.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

146.    Due to Meyersiek's and RI OCSS's accounting fraud "taking interest off" and "putting it

back on again" without legal authority, accounting fraud posting or publicly noticing large

varying alleged "interest" which was already waived and forgiven, of $75,638.00, then

$73,000.00, then $75,621.23 then changing again within a matter of a month or two,

effectively keeping at least six different books of debts in Seguin's file, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter accounting fraud by Meyersiek and his RI OCSS agents who are professionals (accountants and lawyers), in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

147.    Seguin suffered economic harm, distress and mental anguish due to the accounting fraud by the defendants.

148.    Due to RI OCSS's concealment from Seguin its accounting fraud and denying Seguin debt validation and verification of at least six different sets of books in Seguin's file, and due to RI OCSS, as a government agency, owing Seguin, the noncustodial parent, a duty to accurately calculate any alleged debt and provide Seguin with an accounting thereof, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter accounting fraud and deter RI OCSS's denying Seguin the right to validate and verify six books of alleged debt in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

**COUNT XVIII: FRAUD COVER-UP**

149.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

150.    Meyersiek and RI OCSS Defendants know that there is no claim for interest having waived interest and forgiven interest in consideration of Seguin's lump sum payoff payment of $104,185.98.  Defendants know they are in breach of contract.   Meyersiek and RI OCSS know that "put interest back on the system" and the covert liens and levy on Seguin's properties in the State of Texas are legally insufficient and have covered up evidence of

Meyersiek's and RI OCSS's breach of contract documented in Seguin's RI OCSS case file by

denying Seguin access to her case file.  Even after Seguin petitioned for her case file

pursuant to the RI APRA under R.I. Gen. Laws sec. 38-2-1, et seq. to the Secretary of RI

EOHHS, RI OCSS denied Seguin's APRA request and only partially released records,

withholding telephonic records, notes, accounting statements and other records evidentiary

of defendants' waiving of and forgiving interest and all documents relating to RI OCSS

maintained by RI OCSS of RI OCSS clandestinely seizing Seguin's properties in the State of

Texas through legally insufficient liens and levy of the substantial amount $75,638.00, in

breach of contract for interest that Meyersiek already waived and RI OCSS already forgave.

After levying Seguin's bank account on April 28, 2022, RI OCSS defendants never credited

Seguin's RI OCSS child support account for RI OCSS's seizure of Seguin's bank assets.

151.    Seguin suffered economic harm, distress and mental anguish due to the fraud cover-up

by the defendants.

152.    Due to defendants' fraud cover-up, Seguin is entitled to legal and equitable relief,

including damages, and punitive damages to deter fraud cover-up by Meyersiek and RI

OCSS defendants who are professionals (accountants and lawyers), in the future, interest,

costs, attorney's fees and/or other relief deemed appropriate.

**COUNT XIX: RI GOVERNMENT TORT LIABILITY AGAINST RI OCSS DEFENDANTS**

153.    Seguin hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

154.    Defendant RI OCSS and individual defendant RI OCSS agents know that there is no claim

for interest having forgiven interest that Meyersiek waived by agreement.  RI OCSS and RI

OCSS defendants know that "put interest back on the system" and the covert liens and levy

on Seguin's properties in the State of Texas are legally insufficient, and have covered up

evidence of Meyersiek's breach of contract and RI OCSS's breach of contract with Seguin

documented in Seguin's RI OCSS case file by denying Seguin access to her case file.  Even

after Seguin petitioned for her case file pursuant to the RI APRA under R.I. Gen. Laws sec.

38-2-1, et seq. to the Secretary of RI EOHHS, RI OCSS denied Seguin's APRA request and only

partially released records, withholding telephonic records, notes, accounting statements

and other records evidentiary of Meyersiek's waiving of interest and RI OCSS's forgiving

interest, and all documents relating to RI OCSS covertly seizing Seguin's properties in the

State of Texas through legally insufficient liens and levy in breach of contract for interest

that Meyersiek already waived and RI OCSS forgave.

155.    When confronted by the EHO at the Appeals Prehearing, John Langlois of RI OCSS

misleadingly commented, "Didn't Karla tell you Meyersiek changed his mind" knowing fully

well that none of the individual defendants at RI OCSS told Seguin, as so to start to covertly

seize her properties in the State of Texas within two days of Seguin's $104,185.98 payoff

payment on December 7, 2022.  RI OCSS immediately "put interest back on the system"

subsequent to Seguin's payment, and the case tracking history showed no record of any

intention to disclose their adverse actions against Seguin subsequent to Seguin's payoff

payment in December 7, 2021.  RI OCSS seized Seguin's properties covertly without

disclosure, and foresaw and should have foreseen the economic harm and mental anguish

that Seguin would suffer.  Instead of enforcing the contract between Seguin and Meyersiek,

and the contract between Seguin and RI OCSS, RI OCSS punished Seguin for making good on

her end of the deal, namely paying the lump sum payment of $104,185.98 thereby

executing in good faith the terms of contract.  RI OCSS then vigorously covered up its own

breach of contract along with Meyersiek's breach of contract, in addition to their

clandestine seizure of Seguin's properties for interest that was already waived and forgiven

per contract.  Seguin suffered economic harm, distress and mental anguish due to the

tortious acts of the defendants.

156.    Due to the tortious acts committed by RI OCSS, who, as a government agency,

absolutely owes Seguin, the noncustodial parent, a duty of disclosure, a duty to honest

services and dealings, Seguin is entitled to legal and equitable relief, including damages, and

punitive damages to deter tortious acts by RI OCSS agents who are professionals

(accountants and lawyers), in the future, interest, costs, attorney's fees and/or other relief

deemed appropriate.

**COUNT XX: 42 U.S.C. § 1983 CLAIM AGAINST RI OCSS DEFENDANTS FOR RECKLESS INDIFFERENCE TO PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS**

157.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

158.    RI OCSS's official and unofficial policies and customs encouraged, caused, allowed,

and/or enabled Defendants Tighe, Dibiase, Bonin, Fobert, Caballeros, Flynn, Langlois and

Gould to violate Plaintiff's constitutional and state rights without fear of discipline for those

violations.  See *Monell v. Department of Social Services*, 436 U.S. 638 (1978).

159.    RI OCSS has not disciplined Defendants Tighe, Dibiase, Bonin, Fobert, Caballeros, Flynn,

Langlois and Gould for their violations of Plaintiff's constitutional rights and therefore has

implicitly approved, ratified, or adopted Tighe, Dibiase, Bonin, Fobert, Caballeros, Flynn,

Langlois and Gould's unconstitutional actions, yet RI OCSS is responsible for RI OCSS

Defendants' supervision, training, and discipline through its policy making powers and

personnel decisions.

160.    There is an obvious need for RI OCSS to train all its employees on Fourth and Fourteenth

Amendment rights.  RI OCSS, therefore, has demonstrated a policy of deliberate

indifference to such civil rights violations.  See *City of canton v. Harris*, 489 U.S. 378, 389

(1989).

161.    RI OCSS's reckless actions under color of state law before, during, and after Seguin's loss

has caused Plaintiff to suffer and continue to suffer the damages Plaintiff has described.

162.    These deprivations under color of state law are actionable under and may be redressed

by 42 U.S.C. § 1983.

### COUNT XXI: 42 U.S.C. § 1983 CLAIM OF FOURTH AMENDMENT ILLEGAL SEIZURE OF PLAINTIFF'S PROPERTY

163.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

164.    Defendants under color of law deprived Plaintiff of Plaintiff's property rights which are

secured through the Fourteenth Amendment, by seizing Plaintiff's property without a claim

for interest, having already waived interest in consideration of Seguin's payment of a very

large lump sum payoff of child support.

165.    Defendants further covered up their deprivation and their breach of contract by denying

Seguin's right to access her own case records to refute the arrearage calculation of interest

that was already waived, a right secured by the Fourteenth Amendment to the United

States Constitution.

166.    In depriving the Plaintiff of these rights, Defendants committed these unlawful

violations under color of state law in bad faith and with malicious purpose in reckless

disregard of Plaintiff's rights and property rights.

167.    The deprivation under color of state law is actionable under and may be redressed by 42

U.S.C. § 1983.

**COUNT XXII: STATE TORT OF LIABILITY AGAINST DEFENDANTS UNDER 42 U.S.C § 1983**

168.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

169.    Defendants actions underlying their breach of contract to the Plaintiff are illegal under

the United States Constitution's Fourth Amendments as applied to the States via the

Fourteenth Amendment.

170.    This deprivation under color of state law is actionable under and may be redressed by

42 U.S.C. § 1983.

<u>**RELIEF REQUESTED**</u>

**WHEREFORE**, Plaintiff, respectfully requests of this Honorable Court the following relief:

a.  Plaintiff hereby incorporates by reference all the allegations contained in the
    preceding paragraphs of this complaint as though fully stated herein.

b.  Trial by jury on all issues so triable;

c.  Pre-judgment and post-judgment interest;

d.  Damages, including pecuniary damages, in excess of $1,000,000.00.

e.  Damages, costs, and attorney fees where applicable;

f.  Punitive damages, costs, and attorney fees where applicable;

g.   Plaintiff costs of suit, including without limitation, its attorney's fees, expert fees, and actual incurred costs;

h.   Award to Plaintiff of reasonable attorney's fees and costs incurred in connection with this action from the Defendant pursuant to 42 U.S.C. § 1983; and

i.   Such other further relief as the Court deems just and proper or that is necessary to make the Plaintiff whole.

## JURY DEMAND

Plaintiff respectfully requests a jury trial of all issues alleged herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2023, I filed the within Amended Complaint via the ECF filing system and that a copy is available for viewing and downloading.

Respectfully submitted,

Mary Seguin

Pro Se

/s/ *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: February 14, 2023